UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Grandson,

        Plaintiff,

vs.

Western Lake Superior Piping Industry Pension Plan and Board of Trustees of the Western Lake Superior Piping Industry Pension Plan,

        Defendants.

Case No._____

**COMPLAINT**

---

Comes now the Plaintiff, for his cause of action against the Defendants, states and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, and principles of federal common law developed thereunder.

2. This Court has jurisdiction of this action pursuant to 29 U.S.C. §1132(e)(1), ERISA § 502(e)(1) and federal questions under 28 U.S.C. §1331.

3. Venue is proper in this District under 29 U.S.C. §1132(e)(2), ERISA §502(e)(2), because the case involves an employee benefit plan administered to an employee who worked in this District and Defendants may be found in this District.

## PARTIES

4. Plaintiff James Grandson ("Grandson") is a Minnesota resident.

5. Grandson is a participant in the Western Lake Superior Piping Industry Pension Plan ("Pension Plan").

6. The Pension Plan, with offices in Duluth, Minnesota, is a Taft-Hartley, multiemployer defined benefit pension plan, established on May 7, 1968, for eligible members by the Plumbers & Pipe Fitters United Association Local 11 and the Northern Mechanical Plumbing Contractors Association, Inc.

7. The Board of Trustees, with offices in Duluth, Minnesota, is the Plan Administrator of the Pension Plan.

## RELEVANT PENSION PLAN PROVISIONS

8. The Normal Retirement Age under the Pension Plan is age 62. On the date Grandson reached normal retirement age, the Pension Plan in effect at the time was the 2015 Restatement, effective January 1, 2015, as amended.

9. The 2015 Restatement Pension Plan provides the following regarding suspension of benefits:

**6.07 Suspension Of Benefits Upon Reemployment *After* Retirement Date**

(a) <u>Suspension For Disqualifying Employment</u>

If a Participant has commenced receiving benefit payments, the Participant's monthly benefit will be permanently suspended for each month in which the Participant works in Disqualifying Employment to the extent that the Participant's benefit payments are not Required Minimum Distributions.

…

    (c)    On commencement of pension payments, the Trustees shall notify the Participant of the Plan rules governing suspension of benefits. If benefits have been suspended and payment resumed, new notification shall, upon resumption, be given to the Participant, if there has been any material change in the suspension rules or the identity of the industries or area covered by the Plan.

…

    (d)    The Trustees shall notify each *retired* Participant whose benefit payments are suspended pursuant to this section of such suspensions, in writing, by personal delivery or first class mail, during the first calendar month in which such suspension takes place. Such notification shall contain the following information:

        (i)    A statement of the specific reason why benefits payments are being suspended;

        (ii)    a general description of the Plan provisions relating to the suspension of benefits;

        (iii)    a copy of such Plan provisions; and

        (iv)    a statement referring to the Regulations in 29 C.F.R. Section 2530.203-3.

(emphasis added).

10.    The 2015 Restatement Pension Plan defined "Disqualifying Employment" as follows:

**1.14 Disqualifying Employment**

Forty (40) hours or more per month of work in the industry for any Employer or, work in the industry within the jurisdiction of the Union for an employer in the same or related business as any Employer, or self-employment in the industry within the jurisdiction of the Union in the same or related business as an Employer. For purposes of this Disqualifying Employment, the term "industry" means the business activities of the types engaged in by any Employer contributing to the Plan.

11. The definition of Disqualifying Employment was amended effective May 1, 2019, by the Third Amendment to the 2015 Statement Pension Plan as follows:

**1.14 Disqualifying Employment**

Forty (40) or more hours of employment in the same industry covered by the plan, in same geographic area covered by the plan *at the time that the participant commenced benefits*, and in the same trade or craft that the participant was employed in at any time under the plan. Employment includes employment with a contributing employer, a non-contributing employer, and self-employment. For purposes of Disqualifying Employment, the term "industry" means the business activities of the types engaged in by any Employer contributing to the Plan.

12. The Summary Plan Description ("SPD") discusses the suspension of benefits due to Disqualifying Employment under the heading: "WHAT HAPPENS IF I RESUME WORKING AFTER I RETIRE?" The only discussion regarding suspension of benefits is with regard to Disqualifying Employment. The only discussion regarding Disqualifying Employment is in this section.

13. The Pension Plan was again amended and restated in its entirety effective August 31, 2020.

14. The 2020 Restatement Pension Plan applies to all participants except former employees who became inactive or retired prior to August 31, 2020.

15. The 2020 Restatement Pension Plan provides the following in relevant part regarding the suspension of benefits:

**4.08 Suspension Of Benefits Upon Reemployment After Retirement Date**

(a) Suspension For Disqualifying Employment – If a Participant has commenced receiving benefit payments, the Participant's monthly benefit will be permanently suspended for each month in which the Participant works in Disqualifying Employment to the extent that the

    Participant's benefit payments are not Required Minimum Distributions.

…

(c) On commencement of pension payments, the Trustees will notify the Participant of the Plan rules governing suspension benefits. …

(d) The Trustees will notify each retired Participant whose benefit payments are suspended pursuant to this section of such suspensions, in writing, by personal delivery or first class mail, during the first calendar month in which such suspension takes place. Such notification will contain the following information:

 (i) A statement of the specific version why benefit payments are being suspended;

 (ii) a general description of the Plan provisions relating to the suspension of benefits;

 (iii) a copy of such Plan provisions; and

 (iv) a statement referring to the Regulations in 29 C.F.R. Section 2530.203-3.

(Emphasis added).

16. The 2020 Restatement Pension Plan defines Disqualifying Employment as follows:

**5.15 Disqualifying Employment**

Forty (40) or more hours of employment in same industry covered by the plan, in same geographic area covered by the plan *at the time that the participant commenced benefits*, and in the same trade or craft that the participant was employed in at any time under the plan. Employment includes employment with a contributing employer, a non-contributing employer, and self-employment. For purposes of Disqualifying Employment, the term "industry" means the business activities of the types engaged in by any Employer contributing to the Plan.

(Emphasis added).

17. The 2020 Restatement Pension Plan, Section 5.34, provides that the normal retirement age is 62.

18. The 2020 Restatement Pension Plan, Section 5.50, defines Retirement Date as the early retirement date, normal retirement date, or late retirement date.

19. The 2020 Restatement Pension Plan, Section 4.05, states that if a participant does not apply for benefits on the normal retirement date, the Plan will deem the participant to have elected to *defer* benefits.

20. The 2020 Restatement Pension Plan, Section 5.29, defines late retirement date as the first of the month after normal retirement age that the participant elects to start his benefit.

21. The 2020 Restatement Plan provides that the amount of the late retirement benefit is as follows:

> **3.06 Amount of Benefit at Retirement**
>
> The amount of the monthly retirement benefit to be provided in the Normal Form to a Participant will be determined as follows:
>
> …
>
> (c) Late Retirement Benefit. A Participant's retirement benefit on a Late Retirement Date will be equal to the greater of (1) or (2) below:
>
>     (i) The Accrued Benefit on the Late Retirement Date.
>
>     (ii) The Actuarial Equivalent of the Normal Form on the Normal Retirement Date. However, no actuarial increase will be provided for months in which a Participant engages in Disqualifying Employment if the provisions of 29 C.F.R. § 2530.203-3 are satisfied.

22.     The 2020 Restatement Pension Plan was amended to add a Variable Annuity Benefit Program. Effective January 1, 2021, the Pension Fund maintained two benefit programs – a Defined Benefit Program and a Variable Annuity Program. The Defined Benefit Program pays benefits with respect to Past and Future Service Credits earned before January 1, 2021. The Variable Annuity Program pays benefits with respect to VAP Credits earned on or after January 1, 2021. No benefits accrued under the Defined Benefit Program with respect to Hours of Service performed after December 31, 2020.

23.     The 2020 Restatement Pension Plan describes the Variable Annuity Program Late Retirement Benefit as follows:

> **2.08 Variable Annuity Program Late Retirement Benefit**
>
> The VAP Late Retirement Benefit consists of monthly payments in cash to the Participant beginning any time after the Participant's Normal Retirement Date and continuing until death. An individual who has earned VAP credits is eligible to commence receiving the VAP Late Retirement Benefit when 1) the individual's Normal Retirement Date has passed, b) the individual is vested in VAP benefits, c) the individual is not an Employee of any Contributing Employer, and d) the individual has submitted a complete and accurate application for benefits that demonstrates to the satisfaction of the Trustees that the individual is entitled to commence receiving benefits.
>
> The base amount of the first monthly payment under the VAP Late Retirement Benefit is the amount such that the VAP Late Retirement Benefit is the Actuarial Equivalent of the VAP Normal Retirement Benefit. The Plan will calculate this amount at the time that benefits commence. …

24.     The SPD was restated effective January 1, 2021. The SPD also served as a summary of material modification for amendments to the Pension Plan that were effective between January 1, 2020 and January 1, 2021.

7

25. The 2021 SPD, like the prior SPD, discusses Disqualifying Employment under the heading: "WHAT HAPPENS IF I RESUME WORKING AFTER I RETIRE?"

26. The 2021 SPD describes the late retirement benefit as:

**Late Retirement Benefit**

If you *defer* your benefits past your normal retirement date, *your monthly benefit will be increased relative to the normal retirement benefit because the benefit is expected to be paid out over a shorter period of time*. Your monthly benefit is greater of (1) your accrued benefit as of your late retirement date or (b) the actuarial equivalent of the normal retirement benefit. The monthly amount of the late retirement benefit is adjusted if you elect a form of benefit other than the normal retirement benefit.

## FACTUAL ALLEGATIONS

27. Grandson is a member of the Plumbers & Pipe Fitters United Association Local 11 and as such has been a participant in the Pension Plan.

28. Grandson did not retire at age 62. Grandson is currently 65 years old and continues to work in Covered Employment under the Pension Plan.

29. Just prior to Grandson turning 62, he received a letter dated November 1, 2019, from the Third Party Administrator for the Pension Plan along with a "Notice of Suspension of Retirement Benefits." The letter stated that he was receiving the Notice because government regulations required that all Pension Plan participants who reached normal retirement age receive the Notice. It stated that the Notice means that as long as he is working, he will continue to accumulate benefits under the Plan and when he retires his benefits will be based on his Plan service record at his actual age. *The letter states that the term "suspension" refers to the fact that had he actually retired at age 62, he would have been entitled to benefit at that time, and since he did not retire, commencement of his*

8

*benefits will be delayed until he actually retires.* The letter did not state that Mr. Grandson was working in Disqualifying Employment.

30. The Notice of Suspension of Retirement Benefits stated that as provided in Section 1.1 of the Plan, if a participant is employed by a contributing employer after age 62, payment of pension benefits is *delayed* until the participant's actual retirement date. The Notice did not give notice that Grandson was working in Disqualifying Employment nor did it discuss Disqualifying Employment.

31. The 2015 Restatement Pension Plan, in effect on the date of the Notice of Suspension of Retirement Benefits, does not contain a "Section 1.1," as referenced in the Notice.

32. In mid-2021, Grandson began inquiring with the Third Party Administrator and the Local Union regarding the calculation of his pension benefit.

33. The Third Party Administrator sent a letter dated November 8, 2021 to Grandson regarding his inquiries. The letter states that the Trustees of the Pension Plan held discussion of his various questions and concerns at a regularly scheduled Board meeting. The letter requests that Grandson submit to the Board a letter providing specific questions and inquiries he has no later than January 14, 2022, so the Board could review the letter at its next regularly scheduled meeting and provide a response to his inquiries.

34. On January 13, 2022, Grandson sent a letter by email to the Third Party Administrator, which stated that he wanted to ensure that his retirement benefit is paid in accordance with the Pension Plan. He explained that based on the SPD and the Pension

9

Plan, he should be entitled to the actuarial equivalent of his normal retirement benefit at his late retirement date.

35. On January 14, 2022, the Third Party Administrator sent an email to Fund counsel and the Plan's actuarial consultant asking them to collaborate on a response to Grandson's letter so it could be reviewed at the next Board meeting.

36. On February 4, 2022, Fund counsel sent a proposed letter to the Third Party Administrator, which was the same letter that was sent to Grandson dated February 10, 2022.

37. The Fund's counsel sent a letter dated February 10, 2022 to Grandson. The letter states that the Board considered his correspondence to the Board as an appeal for purposes of 29 C.F.R. §2560.503-1 and that the February 10, 2022 letter conveys the final determination on his appeal. The letter stated that the Board found his appeal untimely because the suspension of benefits commenced two years prior, while at the same time, stated that to the extent the appeal pertains to payments not yet due, the appeal is premature. The letter stated that the Board's determination resolved all questions that were or could have been raised on appeal. The letter informed Grandson that if he wished to contest the final determination, he must file a lawsuit in Federal Court within one year of the date of the correspondence. The letter states that the documents considered by the Board were his January 13 correspondence, the Plan document, and Summary Plan Description.

38. The February 10, 2022 letter states that Grandson's position that he is entitled to an actuarial increase in his benefit due to late retirement is contrary to the terms of the Plan. The letter states that Grandson's argument that the Pension Plan violates the

10

suspension of benefit regulation is not correct and that Section 3.06 (c)(ii) of the Pension Plan is permissible. The letters states that the Board determined that when he ceases working in "disqualifying employment," the Plan will not provide an actuarial increase in your benefit payment on account of the suspension of his normal retirement benefit. There was no further discussion regarding any other plan provisions.

39. On August 8, 2022, Grandson sent a nine-page letter to the Trustees explaining why they should reconsider their decision on his right to an actuarial increase at late retirement date. Grandson quoted from provisions of the Plan discussing suspension of benefits, disqualifying employment, and commencement of benefits. He pointed out that the definition of disqualifying employment requires that benefits have commenced, and that the commencement of benefits section requires that he has put in an application, and it has been approved. He pointed out that the Summary Plan Description supported his argument.

40. Fund counsel sent a letter dated September 6, 2022, to Grandson stating that the Trustees "briefly reviewed" his August 8, 2022 correspondence. The letter states that the Trustees were willing to reconsider his matter and evaluate his new arguments if he agreed to two conditions: (1) opening the matter for reconsideration means that his administrative remedies are not exhausted and that he does not have a right to file suit with respect to the issue until the Board has made a new final determination based on the new arguments, although reconsideration would *not* toll the limitations period for filing a lawsuit, unless the decision by the Board is on or after December 12, 2022, in which case the limitations period would expire 60 days after he receives notice of the determination

11

on reconsideration; and (2) that the Board's determination on reconsideration would be a final determination of all arguments that were or could have been raised with respect to his claim to entitlement to a late retirement increase. Grandson was not to reassert arguments that were previously addressed in Fund counsel's February 10 correspondence. Grandson was given 60 days from the date of the September 6, 2022 letter to submit any additional information. The letter states that Grandson was to notify counsel within 10 days if he agreed to the conditions placed for a reconsideration.

41. On September 7, 2022, Fund counsel spoke with Grandson to discuss the issues. Fund counsel followed up with an email to Grandson later that day and requested that he notify him before September 16 if he wishes to initiate a reconsideration under the terms set forth in his September 6 letter. The email also confirmed their discussion that Fund counsel had raised the possibility of having the Plan pay for his attorneys' fees to represent him on the matter if he agreed to abide by the Board's decision in the matter.

42. Grandson responded on September 13, 2022 stating that he did not think an attorney would make much of a difference since the Trustees have been listening to Fund counsel and going by his recommendations for many years. Grandson stated in his letter that when he asked one of the Trustees if he had read and understood Grandson's letter, the Trustee responded that he had read it but did not understand all of it.

43. Around this time, Grandson completed a pension application but informed the Fund Administrator that he did not want it processed unless the Board decided in his favor.

44. As part of the pension application, Grandson was asked to sign a document stating he had read a document entitled "Post-Retirement Employment Restrictions." The purpose of the document was to provide information about his pension benefit and "*restrictions on post-retirement.*" The document states that the Pension Plan "*does not allow you to work in disqualifying employment and receive your pension benefit at the same time.*"

45. Fund counsel sent a letter dated November 9, 2022 to Grandson regarding the Trustee's reconsideration at their regular meeting on November 8. The letter states that the decision letter supersedes the prior decision letter dated February 10, 2022. The letter states that on reconsideration, the Board reversed its prior decision in part and affirmed it in part. The Board concurred with Grandson's argument that he is entitled to a late retirement increase with respect to his benefits under the Variable Annuity Program. The Board determined that he was not entitled to a late retirement increase with respect to benefits under the Defined Benefit Program.

46. The letter states that the Trustees found that Grandson's interpretation of Section 3.06(c) (ii)--that benefits must first commence before work is considered Disqualifying Employment--faulty for the following reasons: (1) Grandson's interpretation was contrary to longstanding practice, stating that the Third Party Administrator's staff had reviewed Plan records and verified that other retirees who worked past normal retirement age did not receive a late retirement increase; (2) Grandson's interpretation would result in substantially different financial outcomes for similarly situated participants, stating that participants who do not retire and continue to work after normal retirement age should be

13

treated similarly to participants who do retire and begin receiving benefits and return to work; (3) Grandson's interpretation was contrary to the "principle of plan interpretation," stating that Grandson's interpretation would apply only to those who have commenced benefits and would result in meaningless surplusage, because it would not apply to anyone; (4) Grandson's interpretation ignores a portion of the relevant text of Section 3.06 (c)(ii) because he focuses on the term "Disqualifying Employment" and did not consider the reference to regulation 29 C.F.R. §2530.203-3.

47.     The November 9, 2022 letter concludes by stating that Grandson's administrative remedies are *now* exhausted and gave notice that if Grandson wished to contest the final determination, a lawsuit must still be filed on or before February 10, 2023.

48.     On December 15, 2022, Grandson's counsel sent a letter to Fund counsel, pointing out that the claim process in this matter was flawed and contrary to ERISA regulations. The Third Party Administrator responded stating that the Board of Trustees' position was set forth in the previous correspondence to Grandson.

## COUNT ONE
## PLAINTIFF'S RIGHTS TO FUTURE BENEFITS UNDER THE TERMS OF THE PENSION PLAN

49.     Plaintiff restates and realleges the allegations in the foregoing paragraphs.

50.     ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) authorizes Plaintiff to bring action to enforce his rights under the terms of the Plan or to clarify his rights as to future benefits under the terms of the Plan.

51. Defendants' determination that Grandson is not entitled to an actuarial increase on the date of his retirement is contrary to the terms of the Pension Plan and violates ERISA's anti-forfeiture provision, 29 U.S.C. §1053(a)(3)(B)(ii).

52. Under the terms of the Pension Plan, Grandson is entitled to the greater of his accrued benefit on the late retirement date or the Actuarial Equivalent of the Normal Form on the Normal Retirement Date.

53. Based on the terms of the Pension Plan, Grandson did not engage in Disqualifying Employment. Defendants failed to address all of Grandson's arguments and their interpretation of the Plan is illogical and unreasonable.

54. Defendants failed to comply with the Pension Plan's claim procedures and ERISA regulations in addressing Grandson's benefit inquiries.

55. Assuming *arguendo* that Grandson's continued employment constituted Disqualifying Employment, Defendants did not provide notice pursuant to the Pension Plan. The Notice of Suspension of Retirement Benefits did not give notice of "Disqualifying Employment" under the Pension Plan. If proper notice is not given, the forfeiture of benefits does not meet the exceptions under the regulations to the anti-forfeitable rule and would require the ability of a participant to receive the Actuarial Equivalent of the Normal Form upon application for a Late Retirement Benefit.

56. The Notice of Suspension of Retirement Benefits does not comply with the notice requirements under 29 C.F.R. § 2530.203-3 because it failed to reference applicable Plan provisions, failed to provide a copy of Plan provisions, and failed to explain the procedures and time frame to request a review.

57. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants enforcing his rights under the terms of the Pension Plan and clarifying that on his Late Retirement Date, he is entitled to the Actuarial Equivalent of the Normal Form on the Normal Retirement Date.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

58. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

59. Defendants have breached their fiduciary duties owed to Plaintiff in failing to give his claim full and fair review as required by ERISA.

60. Defendants breached their fiduciary duty when it considered his letter dated January 13, 2022, as an appeal, when he had not submitted a claim nor received a denial letter.

61. At no point did Defendants provide to Grandson a notification meeting the requirements of a denial letter as described in ERISA regulations. 29 C.F.R. § 2560.503-1(g).

62. Defendants breached their fiduciary duty by failing to provide for a review that did not afford deference to the initial adverse benefit determination and that was conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination in violation of 29 C.F.R. § 2560.503-1(h)(2).

63. Defendants failed to notify Grandson that due to the National Emergency, which began on March 1, 2020 and continues to this day, there is a tolling of the time to submit an appeal.

64. Defendants breached their fiduciary duty to Grandson by requesting that he put his questions relating to his benefit calculation in writing to the Board without indicating it would be part of a formal claim process, and then labeling it an appeal without Grandson's knowledge or consent.

65. Defendants breached their fiduciary duty owed to Grandson when he was informed that he was limited in the arguments he could make on reconsideration by the Board.

66. The Board of Trustees breached their duty owed to Grandson when it placed conditions on its reconsideration.

67. Defendants breached their duty owed to Grandson and misrepresented the Pension Plan when it informed Grandson that the deadline to file a lawsuit was based on the February 10, 2022 decision, rather than the November 10, 2022 decision, which superseded the February 10, 2022 decision.

68. Defendants breached their fiduciary duty owed to Grandson by misrepresenting the terms of the Pension Plan in the Notice of Suspension of Retirement Benefits. The Notice refers to Section 1.1 of the Plan, which does not exist.

69. That as a direct a proximate result of Defendants' actions, Grandson was denied a full and fair review.

70. That after turning age 62, Grandson relied to his detriment on the Summary Plan Description and Pension Plan that his continued work in Covered Employment without commencement benefits was not Disqualifying Employment.

71. That in the alternative, or in addition to, Plaintiff brings this claim for equitable relief under 29 U.S.C. § 1132 (a)(3) due to Defendants' breaches of fiduciary duty owed to Plaintiff. That as a direct and proximate result of Defendants' action, Grandson has been forced to incur costs and attorneys' fees.

**COUNT THREE**
**ATTORNEYS' FEES AND COSTS**

72. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

73. Plaintiff has been forced to bring the within action as a direct result of Defendants' actions.

74. As a direct result of Defendants' acts and failures, Grandson has incurred attorneys' fees and costs. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff requests judgment against the Defendants granting him the following relief:

(1) Clarifying that Grandson's continued employment past age 62 without the commencement of benefits was not Disqualifying Employment, and that he is entitled to the greater of his accrued benefit on the late retirement date or the Actuarial Equivalent of the Normal Form on the Normal Retirement Date.

(2)     Ordering the Defendants to provide Grandson the Actuarial Equivalent of the Normal Form on the Normal Retirement Date on his Late Retirement Date.

(3)     Ordering Grandson equitable relief for Defendants' numerous breaches of fiduciary duties, including his entitlement to the Actuarial Equivalent of the Normal Form on the Normal Retirement Date.

(4)     Ordering the Defendants to pay Plaintiff's costs and attorneys' fees incurred in bringing this action.

(5)     Awarding Plaintiff pre-judgment interest.

(6)     Granting Plaintiff such other and further relief as the Court may deem just and equitable.


Dated:  01/27/2023                               **NOLAN, THOMPSON, LEIGHTON & TATARYN, PLC**

By  /s/ *Denise Y. Tataryn*
Denise Y. Tataryn (#179127)
1011 1st Street South, Suite 410
Hopkins, MN  55343
Phone:  952-405-7171
Fax:     952-224-0647
Email:  dtataryn@nmtlaw.com

***Attorney for Plaintiff***