UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Grandson, | Case No. 23-cv-214 (JWB/LIB) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S REPLY MEMORANDUM** |
| Western Lake Superior Piping Industry Pension Plan and Board of Trustees of The Westen Lake Superior Piping Industry Pension Plan, | |
| Defendants. | |

## INTRODUCTION

Plaintiff did what the Trustees did not. He read the Plan, SPD, and the law, and provided a nine-page explanation of why the Trustees' decision was wrong. Had Defendants considered his explanation, their decision should have been different.

Defendants again rely on evidence outside of the Record (Doblar's Declaration) on Plaintiff's Benefit Due claim, which is inappropriate and should be stricken.[1] Plaintiff's counsel requested the type of information contained in Doblar's Declaration prior to litigation, and none of the information in Doblar's Declaration was provided. Third Tataryn Dec. ¶ 2.

---

[1] Plaintiff's counsel gave notice to Defendants' counsel, but Defendants' counsel maintained her position. Third Tataryn Dec., ¶ 3.

## **CLARIFICATION OF FACTS**

Below are corrections to Defendants' added facts and editorials:

- Defendants state in paragraphs 1, 3, and 4 that the Notice of Suspension informed Grandson of his rights to seek a review of the benefits suspension. That is false. The Notice includes a section on "Your ERISA rights," but it does not address the right to review the suspension nor the procedure for doing so. (2-3).

- Defendants falsely state in paragraph 2 that the Suspension letter advised Plaintiff that his benefits were being permanently withheld and forfeited. Quite the opposite--the Suspension letter states that "suspension" refers to the fact that Grandson is entitled to a benefit at age 62, and that his benefits were being delayed. (1).

- Defendants' statement in paragraph 3 that "most" of the required information was included in the Notice is false. The Notice did not state that Grandson's benefit was being forfeited due to working in Disqualifying Employment; the Notice did not provide a general description of the plan provisions relating to suspension; and the Notice did not provide the procedure to review the benefits suspension. (2-3).

- Regarding paragraphs 8, 9, and 12, there is no evidence showing that Grandson's 2021 inquiry, his 2022 appeal, or prior Counsel's Memorandum were provided to the Trustees prior to the Board meetings. Grandson's inquiry and appeal were directed to the Trustees and sent to Wilson McShane, but not forwarded to the Trustees. (5, 1234).

## PLAINTIFF IS ENTITLED TO AN ACTUARIAL INCREASE

Defendants argue there is no conflict of interest and that the procedural irregularities in *Chronister*, cited by Plaintiff, were egregious and as such, do not support Plaintiff's argument. Defendants claim that because the Trustees are not the "Employer," there can be no conflict. However, the Trustees include both employer and Union representatives. The Union is considered an employer for the purpose of making contributions to the Trust Fund. (182). The Trustees also establish the Plan's funding policy. (159). The Trustees' dual role of both evaluating and paying benefits creates a conflict. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-112 (2008). The Court considers a conflict of interest along with other factors that may show an unfair review process in determining if an administrator has abused its discretion. *Id.* at 116-117. Thus, contrary to Defendants' argument, any breach of a fiduciary's obligations in the processing of a claim are relevant.

Defendants did not address the evidence of procedural errors supporting an abuse of discretion. (*See* Plaintiff's Mem., pp. 24-25). *Chronister* is not the only case to support an abuse of discretion based on procedural irregularities. *See, e.g., Diaz Metro. Life Ins. Co.*, 649 F.Supp.3d 832, 848 (D. Minn. 2023) (the Court's determination that MetLife abused its discretion was "further supported by procedural irregularities" that were "apparent from the Court's review of the administrative record."). Courts review benefit denials for procedural regularity, substantive merit, and faithful execution of fiduciary duties, reversing the administrator's decision where the plan's decision is unreasonable in any of these areas. *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1138 (7th Cir. 2017); *Jenkins v. Price Waterhouse Long Term Disability Plan,* 564 F.3d 856, 860-

861 (7th Cir. 2009). The Court need not establish a causal connection between the serious procedural irregularity and a breach of fiduciary duty in an abuse-of-discretion analysis. *Chronister v. Unum Life Ins. Co. of America*, 563 F.3d 773, 776 n.4 (8th Cir. 2009).

Defendants' serious procedural irregularities (failure to follow claim procedures, failure to consider all evidence in the record, failure to investigate) clearly did impact Defendants' decision making. Had Defendants considered all Grandson's information, the amendment to the definition of Disqualifying Employment in 2019, and the lack of proper notice to Grandson, Defendants could not have reasonably made the decision they did. Defendants' action in passing the baton to prior Counsel to handle all aspects of the claim processing is contrary to the Plan. Prior Counsel's interpretation (which relied upon Wilson McShane's interpretation) should not be given any deference, as prior Counsel did not have discretionary authority to review claims and make benefit decisions. There is no analysis by the Trustees in which to give deference, only two Trustees approved the final denial letter. (74, 1251-1259)

Prior Counsel's Memorandum and final decision do not address Grandson's concern that the Trustees would not review his information; Grandson's recitation of various provisions in the Plan and SPD that require commencement of benefits, other than to admit that there was a glitch in the language; Grandson's argument that the Plan is not written like 203(a)(3)(B) service; that Grandson was informed that his benefits were "delayed"; that the Notice of Suspension did not state he was working in Disqualifying Employment; and that the SPD is required to include limitations on benefits. (21-29, 41-42, 43-45). Nor

is there evidence the Trustees addressed these concerns and arguments. (71-75). The failure to do so means that Grandson was denied a fair and full review. (*See* Doc. 55, pp. 24-25).

Prior Counsel's tortured interpretation of Section 3.06(c)(ii) does not pass muster under any of the Finley factors. Additionally, Defendants have not analyzed three of the five *Finley* factors correctly.

### A. <u>Defendants' Interpretation of the Plan is Contrary to the Clear Language</u>.

Courts give "significant weight" to "a misinterpretation of unambiguous language in a plan." *Lickteig v. Business Men's Assur. Co. of America,* 61 F.3d 579, 585 (8th Cir. 1995); *Lao v. Hartford Life & Accident Inc. Co.*, 319 F.Supp.2d 955 (D. Minn. 2004). "When the trustees' interpretation of a plan is in direct conflict with the express language in a plan, this action is a very strong indicator of arbitrary and capricious behavior." *Id.*

Defendants argue that the *decision* is reasonable because it is based on Section 3.06(c)(ii)'s incorporation of the regulation, without any discussion about the actual language. Defendants argue that the sentence, "However, no actuarial increase will be provided for months in which a Participant engages in Disqualifying Employment if the provisions of 29 C.F.R. § 2530.203-3 are satisfied" should be interpreted to mean that no actuarial increase will be provided for months in which a Participant engages in Section 203(a)(3)(B) service. Obviously, the clear language does not say this or even mention 203(a)(3)(B) service. The capitalized terms "Disqualifying Employment" plainly refers to the Plan's definition, which Defendants have made no attempt to explain. The fact that prior Counsel recommended that the Plan be amended to address this, and that he previously interpreted the language just as Grandson did, not only shows that prior Counsel

5

did not think his interpretation was based on the clear language but that he was dishonest. (41, Doc. 70-3, pp. 4-6).

### B. **Defendants' Interpretation is Not Consistent with the Goals of the Plan**.

A plan interpretation that "erroneously deprives employees of benefits which would otherwise be due them" cannot be consistent with plan objectives. *Lickteig,* 61 F.3d at 585. "Indeed, a consistently unreasonable interpretation is arguably worse than an inconsistently unreasonable one." *Lao,* 319 F.Supp.2d at 961.

The final decision reasons that the plan is intended to uniformly treat similarly participants. But participants who retire and commence benefits are not similarly situated to participants who continue in covered employment. Benefits do not begin unless participants stop working. They are not the same in all economic respects, because one group has received benefits and the other has not. Further, the Plan is not designed to treat participants uniformly.

In support of their argument, Defendants quote from two cases but do not provide proper context. In *Guzman*, the Court held that the Plaintiff could not rely solely on the headings of a provision, and that the *text* of the provision did not support his argument. *Guzman v. Building Service 32BJ Pension Fund,* 2023 WL 2526093, *14-15 (S.D.N.Y. Mar. 15, 2023). In *Leighton*, Delta argued its interpretation was consistent with the goals of the Plan by treating plan participants *fairly*. *Leighton v. Delta Air Lines, Inc.,* 2022 WL 980301, *6 (D. Minn. Mar. 31, 2022). Importantly, the Court found that Delta's interpretation was not contrary to its clear meaning, nor did it render any language meaningless. *Id.* at 5.

6

## C. Defendants' Interpretation Renders Language of the Plan Meaningless.

Defendants argue that *Plaintiff's* interpretation renders language of the Plan meaningless and that its interpretation is appropriate in *context* because it is *consistent with longstanding practice* and in accord with Treasury regulations. The correct analysis under *Finley* is whether *Defendants'* interpretation renders language meaningless. It clearly does based on Defendants' own admission that it disregards the defined term "Disqualifying Employment." Defendants' interpretation also gives no meaning to the words "if" and "satisfies." Defendants argue that the Suspension of Benefits provision is not rendered meaningless, because Plaintiff acknowledges that his benefits were suspended, and he received notice. This analysis is illogical and does not address the Plan language, which is rendered meaningless by Defendants' interpretation: "Suspension For *Disqualifying Employment* – If a Participant *has commenced receiving benefit payments*, the Participant's monthly benefit will be permanently suspended…" (162, 107).

The final denial reasons that if Section 3.06(c)(ii) applies only to those who have commenced benefits, that class of participants can never be eligible for a late retirement increase. That is incorrect. If a participant commences benefits and then returns to Disqualifying Employment, the participant's benefit will then be recalculated when the benefit is restarted. The Plan provides that a participant will continue to accrue benefits during the reemployment period. (163). The Plan does not have a separate provision for the calculation of benefits for those participants who were reemployed following the commencement of benefits. Section 3.06(c) is the only section that addresses the calculation of the benefits.

7

Grandson's interpretation fits well with the rest of the Plan, which defines Disqualifying Employment and the permanent suspension of benefits for Disqualifying Employment as only occurring after retirement date and the commencement of benefit payments.

### D. **Defendants' Interpretation Conflicts with ERISA.**

Defendants do not address Plaintiff's argument that unless the Plan provides for the forfeiture of benefits within the permissible limits of the law, a failure to actuarially adjust benefits to account for the missed payments, Defendants have violated the law. Instead, Defendants argue that because ERISA permits a forfeiture for Section 203(a)(3)(B) service, its interpretation does not violate ERISA. Defendants' argument misses the point. The Plan must first provide for it.

### E. **Defendants Have Not Interpreted the Words at Issue Consistently.**

Instead of addressing whether Defendants have interpreted "the words at issue consistently," Defendants use evidence outside the Record to argue the *decision* is consistent with the longstanding *practice* of Wilson-McShane. As discussed, the use of Doblar's Declaration is improper, and in any event, a declaration from someone other than the Trustees is not relevant to the analysis. There is no evidence in the Record that the Trustees have ever issued a decision interpreting the words at issue. The current definition of Disqualifying Employment did not come into effect until May 2019. (130-135). Therefore, this factor does not weigh in Defendants' favor.

In summary, based on the *Finley* factors, Defendants' interpretation of the Plan is unreasonable.

8

## **THE EVIDENCE SUPPORTS GRANDSON'S FIDUCIARY BREACH CLAIMS**

Defendants argue that Plaintiff has not established all necessary elements to support his fiduciary breach claims. Defendants fail to consider the relevant facts and misinterpret the law.

### A. **The SPD Misled Grandson.**

Defendants claim there is zero evidence to support Plaintiff's claim. The facts demonstrating that the SPD contained materially misleading statements and Grandson's reliance on those misstatements are in the Amended Complaint (Doc. 41, ¶¶ 12, 25, 26, 34, 64-66, 71-75), his August 2022 appeal (22, 24, 26-27, 29), his deposition (Doc. 63-2, pp. 31-36, 43-44, 50-51, 60, 96), and Summary Judgment Memorandum. (Doc. 55, pp. 27-28). Grandson reviewed each of the SPDs that he received and had the expectation that if he worked beyond age 62, his benefits would be actuarially adjusted for his delayed payments. (Doc. 63-2, pp. 31-36, 60, 96). The causal connection between the misstatements and Grandson's detrimental reliance is an easy one to make. The SPD provision that describes Plan section 3.06(c) leaves out the key language upon which Defendants rely to deny Grandson's late retirement factor:

> If you defer your benefits past your normal retirement date, your monthly benefit will be increased relative to the normal retirement benefit because the benefit is expected to be paid out over a shorter period of time. Your monthly benefit is the greater of (1) your accrued benefit as of your late retirement date or (2) the actuarial equivalent of the normal retirement benefit.

(Doc. 63-3, p. 8). This description gave Grandson no reason to believe he would lose benefits by deferring his benefits and continuing to work. (Doc. 63-2, pp. 34-36). Clearly, Grandson has been harmed by relying on the misleading SPD.

While Defendants try to distinguish *Amara* and *Silva*, it is the Court's discussion of the available equitable remedies in those cases that is important, as both cases were remanded back to the District Court. *Cigna Corp. v. Amara*, 563 U.S. 421, 442-444 (2011); *Silva v. Metro. Life Ins. Co. 762 F.3d 711*, 724-728 (8th Cir. 2014). In addition, Defendants only address Grandson's request for relief based on equitable estoppel and do not address Grandson's request to be made whole based on surcharge or reformation. (Doc. 55, pp. 25-28; *see also* Doc. 69, pp. 31-35). Detrimental reliance is not required for surcharge or reformation. *Amara*, 563 U.S. at 443-444. To obtain relief for violations of sections 1022 and 1024, only harm and causation is needed. *Id.* at 444. The Second Circuit, following remand, affirmed the District Court's decision that plaintiffs were entitled to the reformation remedy. *Amara v. Cigna Corp.*, 775 F.3d 510 (2nd Cir. 2014). The Court described the fraud element as generally consisting of obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith. There, it was sufficient that Cigna had misrepresented the terms of the pension plan and failed to provide accurate information.

### B. The Notice of Suspension and Letter Were Misleading and Deficient.

Defendants argue that Plaintiff provides no evidence that he relied on the Notice and letter to his detriment. Defendants' argument assumes that Grandson understood his benefits were being forfeited. Defendants are aware this is not true and do not address most of Plaintiff's arguments. (Doc. 63-2, pp. 22-23, 39, 43-44, 89-90, 96; Doc. 55, pp. 28-31). Plaintiff testified that he would not have continued working if he had known he would not receive actuarial increases for his missed payments. (Doc. 63-2, p. 96).

### C. Trustees' Failure To Investigate.

Defendants argue they were entitled to rely on Counsel because they are not experts. However, the only issue decided by prior Counsel was the interpretation of Section 3.06(c)(ii). There is no discussion of the law in his Memorandum. (41-42).

It is imprudent for Trustees to be incapable of performing their most basic responsibilities. (169). The Trustees breached their duties when they "blindly accepted" prior Counsel's "conclusions hook, line, and sinker." *Wuollet v. Short-term Disability Plan of RSKCo,* 360 F.Supp.2d 994, 1010 (D. Minn. 2005). The Trustees performed no independent investigation despite red flags and Grandson's complaints. (Third Tataryn Dec., Ex. 16; Doc. 63-2, pp. 15-26). Prior Counsel relayed there was a "glitch" in the language at issue and recommended amending the Plan. (41). Four of the Trustees who decided Grandson's claim were Trustees involved in revising the definition of "Disqualifying Employment," which added the words "at the time that the Participant commenced benefits." (71, 130; Doc. 56-5). The Trustees fired Prior Counsel in part due to their dissatisfaction on Grandson's matter. (Doc. 70-2).

Defendants' nitpicking of documents discussed by Plaintiff does not change the substance of Plaintiff's arguments.

## CONCLUSION

Plaintiff has shown that he is entitled to benefits under the terms of the Plan and, alternatively, that he is entitled to relief for Defendants' breaches of their fiduciary duties. At most, Defendants' arguments show there are material facts in dispute on the fiduciary breach claims.

Respectfully submitted,

Dated: 10/04/2024

**NOLAN, THOMPSON, LEIGHTON & TATARYN, PLC**

By /s/ *Denise Y. Tataryn*
Denise Y. Tataryn (#179127)
1011 1st Street South, Suite 410
Hopkins, MN  55343
Phone: 952-405-7171
Fax:    952-224-0647
Email: dtataryn@nmtlaw.com

***Attorney for Plaintiff***