## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JAMES GRANDSON,                                    Case No. 23-cv-214 (LMP/LIB)

                          Plaintiff,

v.

WESTERN LAKE SUPERIOR PIPING          **ORDER GRANTING PLAINTIFF'S**
INDUSTRY PENSION PLAN; BOARD          **MOTION FOR SUMMARY**
OF TRUSTEES OF THE WESTERN            **JUDGMENT AND DENYING**
LAKE SUPERIOR PIPING INDUSTRY         **DEFENDANTS' MOTION FOR**
PENSION PLAN,                         **SUMMARY JUDGMENT**

                          Defendants.

Denise Yegge Tataryn**, Nolan Thompson Leighton & Tataryn PLC**, **Hopkins, MN**, for Plaintiff.

Ernest F. Peake & Stacey L. Drentlaw, **Taft Stettinius & Hollister LLP**, **Minneapolis, MN** for Defendants.

Plaintiff James Grandson ("Grandson") and Defendants Western Lake Superior Piping Industry Pension Plan (the "Pension Plan") and Board of Trustees of the Western Lake Superior Piping Industry Pension Plan (the "Trustees") (collectively, "Defendants") each move for summary judgment on Grandson's claim for benefits due under the Employee Retirement Income Security Act ("ERISA") and Grandson's breach-of-fiduciary-duty claim under ERISA.[1]  For the following reasons, the Court grants Grandson's motion and denies Defendants' motion.

---

[1]     Grandson brings a third cause of action for attorneys' fees and costs under ERISA.

## FACTUAL BACKGROUND[2]

Grandson is a participant in the Pension Plan, which is a defined benefit pension plan governed by ERISA, ECF No. 66 at 2–4, and administered by the Trustees, *id.* at 78. The Pension Plan provides for retirement benefits at the "normal retirement age" of 62. *Id.* at 88. If an employee participating in the Pension Plan retires after the age of 62, the employee may be eligible for a "late retirement benefit" that is equivalent to an actuarial increase from the normal retirement benefit. *Id.* at 100, 154. Section 3.06(c)[3] of the Pension Plan provides an exception to this rule, however: "[N]o actuarial increase will be provided for months in which a Participant engages in Disqualifying Employment if the provisions of 29 C.F.R. § 2530.203-3 are satisfied."[4] *Id.* at 154.

At all times relevant to this action, the Pension Plan defined "Disqualifying Employment" as:

> Forty (40) or more hours of employment in the same industry covered by the plan, in [the] same geographic area covered by the plan at the time that the participant commenced benefits, and in the same trade or craft that the participant was employed in at any time under the plan. Employment includes employment with a contributing employer, a non-contributing employer, and self-employment.

---

[2]    The factual background contains only the undisputed facts in the summary-judgment record.

[3]    The exact citation of this section varies in different versions of the Pension Plan, but the language of this section has remained materially the same. *See* ECF No. 66 at 100 (same plan language, but listed as Section 4.04(c)). Because this Pension Plan provision is cited as "Section 3.06(c)" in the correspondence between the parties, the Court will cite to this provision as such.

[4]    As explained below, 29 C.F.R. § 2530.203-3 authorizes a pension plan to suspend or forfeit a plan participant's pension benefits after the attainment of normal retirement age under certain circumstances.

*Id.* at 132.

The Pension Plan was summarized in Summary Plan Descriptions ("SPDs") issued to Grandson in 2015 and 2021. *Id.* at 218–35, 236–56. Both the 2015 and 2021 SPDs explained how late retirement benefits would be calculated. The 2015 SPD provides:

> If you defer your benefits past your normal retirement date, your monthly benefit will be increased relative to the normal retirement benefit because the benefit is expected to be paid out over a shorter period of time. Your monthly benefit is the actuarial equivalent of the normal retirement benefit.

*Id.* at 225. The 2021 SPD is largely identical, but it adds that the "monthly benefit is the greater of (a) your accrued benefit as of your late retirement date or (b) the actuarial equivalent of the normal retirement benefit." *Id.* at 245. Both the 2015 and 2021 SPDs also contained information about Disqualifying Employment under a heading titled "WHAT HAPPENS IF I RESUME WORKING AFTER I RETIRE?" *Id.* at 227, 246. On this point, the 2021 SPD reflected a 2019 amendment[5] to the definition of "Disqualifying Employment," stating, "Disqualifying employment is work (including self-employment) for at least 40 hours within a month in the [] industry, trade or craft, and geographical region that was covered by the Plan at the time you commenced your benefits." *Id.* at 246.

On November 1, 2019, shortly before Grandson turned 62, the third-party administrator of the Pension Plan sent a "Suspension of Retirement Benefits Notice" (the

---

[5]    Prior to May 1, 2019, the Pension Plan defined "Disqualifying Employment" as "Forty (40) hours or more per month of work in the industry for any Employer or, work in the industry within the jurisdiction of the Union for an employer in the same or related business as any Employer, or self-employment in the industry within the jurisdiction of the Union in the same or related business as any Employer." ECF No. 66 at 83–84.

"Notice") to Grandson.  *Id.* at 2–4; *see* ECF No. 66-1 at 32–33.  The Notice explained that "if a participant is employed by a contributing employer after age 62, payment of pension benefits is delayed until the participant's actual retirement date."  ECF No. 66 at 3. Grandson elected to continue working for a "contributing employer" after he turned 62— indeed, his very same employer—and, accordingly, did not receive payment of his retirement benefits.  *See* ECF No. 66-1 at 41.

Fast forward to mid-2021, when Grandson was contemplating retirement and began to inquire about how his pension benefit would be calculated.  ECF No. 66 at 5.  Grandson asserted that he was entitled to a late retirement benefit equivalent to an actuarial increase from his normal retirement benefit.  *Id.* at 6.  In November 2021, the Trustees invited Grandson to submit a letter detailing his argument, *id.* at 5, which Grandson submitted in January 2022, *id.* at 6.  The Trustees considered Grandson's letter at their February 2022 meeting and, after receiving advice from Plan Counsel about the interpretation of the Pension Plan, ultimately concluded that Section 3.06(c) of the Pension Plan did not permit Grandson to receive an actuarial increase in benefits because he had been engaged in "Disqualifying Employment."  *Id.* at 19–21, 64–65.  The Trustees authorized Plan Counsel to send Grandson a letter memorializing their conclusions, which was sent to Grandson on February 10, 2022.  *Id.* at 19–21.  That letter states that the Trustees "considered [Grandson's] correspondence an appeal for purposes of 29 C.F.R. § 2560.503-1" and that the February 10, 2022 letter was a "final determination on [Grandson's] appeal."  *Id.* at 19. The letter further advised that Grandson was required to "file a lawsuit in Federal Court

within one year of the date of" the letter if he wanted to "contest the final determination." *Id.*

In August 2022, Grandson, unrepresented, sent a detailed, eight-page letter to the Trustees requesting reconsideration of their decision. *Id.* at 23–30. The Trustees considered Grandson's letter at their September 2022 meeting, at which Plan Counsel recommended allowing Grandson to submit a "final appeal and complaint regarding the benefit calculation." *Id.* at 69. The Trustees approved this recommendation, and Plan Counsel sent a letter to Grandson on September 6, 2022, allowing Grandson to submit additional arguments and evidence to support his claim, but on two conditions: (1) Grandson would not file suit until the Trustees reconsidered his request, and (2) the Trustees' determination on reconsideration would be considered a final determination of all arguments that were or could have been raised. *Id.* at 32. On September 13, 2022, Grandson rejected the Trustees' conditions on his reconsideration request, *id.* at 35, and Plan Counsel responded that the Trustees would consider Grandson's reconsideration request on the arguments and evidence already submitted, *id.* at 36.

At their November 2022 meeting, the Trustees again considered Grandson's claim that he was entitled to an actuarial increase in benefits. *Id.* at 74–75. In advance of the meeting, Plan Counsel prepared a memorandum analyzing Grandson's arguments and ultimately concluded that Grandson was not eligible for an actuarial increase in benefits because he engaged in "Disqualifying Employment" under Section 3.06(c) of the Pension Plan. *Id.* at 42–43. Plan Counsel discussed the memorandum with the Trustees at the November 2022 meeting, and the Trustees adopted Plan Counsel's recommendation not to

award Grandson an actuarial increase in benefits. *Id.* at 74–75. Plan Counsel sent Grandson a letter on November 9, 2022, explaining the denial and stating that it was the Trustees' "final determination." *Id.* at 44–46. The November 9, 2022 letter concluded: "Your administrative remedies are now exhausted. . . . If you wish to contest the final determination, you must file a lawsuit in Federal Court on or before February 10, 2023." *Id.* at 46. To date, Grandson has not retired and has not received any retirement benefits. *See* ECF No. 66 at 55.

Grandson filed this action on January 27, 2023, bringing claims for benefits due and breach of fiduciary duty under ERISA. ECF No. 1. Defendants moved to dismiss Grandson's complaint on the grounds that (1) Grandson had failed to timely exhaust administrative remedies, (2) the Pension Plan unambiguously precluded Grandson from receiving an actuarial increase in benefits, and (3) Grandson's breach-of-fiduciary-duty claim sought the same relief as his benefits-due claim. *See* ECF No. 13. United States District Judge Jerry W. Blackwell rejected the first two arguments, but accepted the third, granting the motion to dismiss Grandson's claim for breach of fiduciary duty. *See* ECF No. 22. Grandson later repleaded the claim for breach of fiduciary duty in his Amended Complaint. *See* ECF No. 41. The parties now each move for summary judgment on Grandson's benefits-due and breach-of-fiduciary-duty claims. *See* ECF Nos. 53, 59.

## ANALYSIS

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted) (internal quotation marks

6

omitted).  At this procedural juncture, this Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted) (internal quotation marks omitted).  Additionally, the Court must view the facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## I.    Grandson's Benefits-Due Claim[6]

Count I of Grandson's Amended Complaint seeks pension benefits due under 29 U.S.C § 1132(a)(1)(B).  Grandson moves for summary judgment on this claim, arguing that Defendants erroneously denied him an actuarial increase in benefits, contrary to the plain language of the Pension Plan.  ECF No. 55 at 15–25.  Defendants also seek summary judgment on this claim, arguing that Grandson failed to exhaust administrative remedies and that the Trustees' interpretation of the Pension Plan was reasonable.  ECF No. 61 at 18–30.   Because Grandson exhausted his administrative remedies, and because Defendants' denial of benefits was an abuse of discretion, the Court grants Grandson's motion, and denies Defendant's motion, on Count I.

### A.    Exhaustion of Administrative Remedies

As a threshold matter, "exhaustion of contractual remedies is required in the context of a denial of benefits action under ERISA when there is available to a claimant a

---

[6]    Because the parties' response briefs largely mirror the parties' own summary judgment motions and respond to the same issues, the Court addresses the two motions for summary judgment together.

contractual review procedure." *Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1063 (8th Cir. 2006). Defendants argue that Grandson failed to timely exhaust his administrative remedies pursuant to Section 6.07 of the Pension Plan, which provides that a request to review "the determination suspending [a participant's] benefits" must be filed within 60 days of the Notice (in Grandson's case, January 1, 2020). ECF No. 61 at 18–20.

The problem with Defendants' argument is that Grandson is not challenging "the determination suspending [his] benefits"; rather, Grandson is challenging the computation of benefits that results *after* his benefits were suspended. Grandson does not dispute that the Trustees could suspend his retirement benefits while he continued to work. Accordingly, there would have been no reason for Grandson to raise a challenge to his retirement benefits when he reached the normal retirement age. Having suspended Grandson's benefits, however, the Trustees are faced with a different dispute: how those suspended benefits should be calculated. The 60-day deadline in Section 6.07 therefore does not apply to Grandson's claim that he is owed an actuarial increase in benefits.

As to that claim, Grandson has satisfied the administrative exhaustion requirement in spades. Grandson communicated his claim to the Trustees in multiple letters, which the Trustees themselves construed as an administrative appeal "for purposes of 29 C.F.R. § 2560.503-1." ECF No. 66 at 19. And after the Trustees denied Grandson's request for consideration in November 2022, the Trustees explained to Grandson, "Your administrative remedies are now exhausted. . . . If you wish to contest the final determination, you must file a lawsuit in Federal Court on or before February 10, 2023." *Id.* at 46. Evidently, Defendants themselves considered Grandson to be taking advantage of his administrative

remedies and to have exhausted those remedies as of November 9, 2022. The Court rejects Defendants' present "post hoc rationales" to the contrary. *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (citation omitted) (internal quotation marks omitted).

Moreover, the important objectives of exhaustion were furthered by Grandson's appeal before the Trustees, as the Trustees were provided "an opportunity to correct errors," "assembl[ed] a fact record" for this Court to review, and engaged in "a non-adversarial dispute resolution process." *Wert*, 447 F.3d at 1066 (citation omitted) (internal quotation marks omitted). To his credit, on his own, Grandson did everything required of him under the Plan and the law to seek an administrative resolution of his claim. And all parties behaved as if he had. This cements the conclusion that Grandson properly exhausted his administrative remedies.

### B.  The Trustees' Determination Was an Abuse of Discretion

The parties are largely in agreement on the relevant facts applicable to Grandson's benefits-due claim. And the parties agree that ERISA's abuse-of-discretion standard applies to the Trustees' determination that Grandson is ineligible for an actuarial increase in benefits. ECF No. 55 at 15–16; ECF No. 61 at 20–21. Under that standard of review, "the administrator's decision need be only reasonable," meaning that it must be supported by substantial evidence, and that decision will be reversed only if it was arbitrary and capricious. *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006) (citations omitted).

To determine whether the Trustees' decision was an abuse of discretion, courts in this Circuit examine five factors: (1) whether the administrator's interpretation is contrary

to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation. *See Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). While these non-exhaustive factors inform the Court's analysis, "the ultimate question remains whether the plan interpretation is reasonable."[7] *Peterson v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 776 (8th Cir. 2019).

## 1.   Interpretation Contrary to Pension Plan Language

The parties' dispute boils down to the interpretation of Section 3.06(c) of the Pension Plan, which provides that "no actuarial increase will be provided for months in which a Participant engages in Disqualifying Employment if the provisions of 29 C.F.R § 2530.203-3 are satisfied." The parties hotly dispute whether Grandson was engaged in "Disqualifying Employment," as that phrase is interpreted in the Pension Plan in effect at the time Grandson reached the normal retirement age:

> Forty (40) or more hours of employment in the same industry
> covered by the plan, in same geographic area covered by the
> plan at the time that the participant commenced benefits, and
> in the same trade or craft that the participant was employed in
> at any time under the plan. Employment includes employment

---

[7]   Grandson notes that another factor this Court may consider is whether there exists a conflict of interest from the defendant both funding the plan and deciding the claim. ECF No. 55 at 16–17. But Grandson neither alleges nor argues that Defendants have both funded the Pension Plan and decided the claim; in fact, it appears that Defendants do *not* fund the Pension Plan. ECF No. 66 at 95, 160. The Court therefore does not consider the conflict-of-interest factor.

with a contributing employer, a non-contributing employer,
and self-employment.

ECF No. 66 at 132. Grandson does not dispute that he was employed full-time in

the same industry covered by the Pension Plan, that he worked in the same geographic area

covered by the Pension Plan, or that he worked in the same trade or craft that he was

employed in under the Pension Plan. Rather, he argues that Disqualifying Employment

can only begin after "the participant commenced benefits," and because it is undisputed

that he never commenced benefits while working after normal retirement age, he could not

have engaged in "Disqualifying Employment" under the Pension Plan in effect at the time

he reached the normal retirement age. ECF No. 55 at 19. Defendants respond that

Grandson's interpretation of "Disqualifying Employment" is unreasonable because

individuals who have commenced benefits could never be eligible for a late retirement

increase, rendering Section 3.06(c) superfluous. ECF No. 61 at 20.

Grandson's interpretation accords with the plain language of the Pension Plan's

definition of "Disqualifying Employment" in effect at the time Grandson reached the

normal retirement age, which explicitly contemplates that an employee engages in

Disqualifying Employment only *after* "the participant commenced benefits." ECF No. 66

at 132. Indeed, even Plan Counsel recognized that Grandson had identified a "glitch" in

the applicable definition of Disqualifying Employment. ECF No. 66 at 43. Although Plan

Counsel waved away the significance of that "glitch," Grandson is entitled to have the Plan

language applicable to him enforced, glitches and all, because "[e]ven under the deferential

abuse-of-discretion standard, a plan administrator cannot contradict the plain language of

11

an ERISA plan to deny benefits." *Knowlton v. Anheuser-Busch Cos. Pension Plan*, 849 F.3d 422, 430 (8th Cir. 2017); *see also Lickteig v. Bus. Men's Assurance Co. of Am.*, 61 F.3d 579, 585 (8th Cir. 1995) (explaining that in applying the *Finley* factors, "significant weight should be given to" a plan administrator's "misinterpretation of unambiguous language in a plan").[8]

Although the Pension Plan's language forms the core of the benefits-due analysis, the Court may also consult the SPDs to glean further insight into a participant's rights and obligations under the Pension Plan. *See Bowers v. Life Ins. Co. of N. Am.*, 21 F. Supp. 3d 993, 1000 (D. Minn. 2014). Here, the 2021 SPD states that a late retirement benefit "is the greater of (a) [the participant's] accrued benefit as of [the participant's] late retirement date or (b) the actuarial equivalent of the normal retirement benefit," without any qualification as to the consequences of engaging in Disqualifying Employment. ECF No. 66 at 245. And, to put a finer point on it, the portion of the SPD explaining the amended definition of "Disqualifying Employment" further supports Grandson's interpretation because it clarifies that such employment is evaluated by reference to the position the participant held "*at the time [the participant] commenced [his] benefits*." *Id.* at 246 (emphasis added).

---

[8]    Defendants' argument that Grandson's interpretation of "Disqualifying Employment" renders the Pension Plan's language meaningless and superfluous is addressed within that respective *Finley* factor.

Because Grandson indisputably never commenced benefits during his period of alleged Disqualifying Employment,[9] he cannot be classified as engaging in "Disqualifying Employment" under the Pension Plan.  Accordingly, to the extent the Trustees denied Grandson an actuarial increase in benefits because they concluded that he was engaged in "Disqualifying Employment" (as that term is defined in the Pension Plan), the Trustees abused their discretion.  *See Knowlton*, 849 F.3d at 430.

The matter does not end there, however, for Defendants advance an alternative argument that Section 3.06(c) incorporates by reference the definition of "disqualifying employment" in 29 C.F.R § 2530.203-3.  ECF No. 61 at 25–26.  That regulation provides that a plan need not provide an actuarial increase in benefits to compensate for the period after normal retirement age that payment of the benefits is deferred because the recipient is engaged in "section 203(a)(3)(B) service."  29 C.F.R § 2530.203-3(b).  In turn, "section 203(a)(3)(B) service" in this context is defined as "the employment of an employee subsequent to the time the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment."  29 C.F.R § 2530.203-3(c)(2).

---

[9]    At oral argument, Defendants' counsel suggested that Grandson *had* commenced benefits by the very act of continuing to work past the age of 62.  Whatever the merits of that argument, it is doubly forfeited, first because it was raised for the first time at oral argument, *see Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020), and second because it was not the rationale the Trustees used in denying Grandson's claim for benefits, *King*, 414 F.3d at 999 (rejecting post hoc rationales for administrator decisions).  In fact, the Trustees took the opposite position, writing to Grandson in November 2022 that he "ha[d] *not* commenced benefits."  ECF No. 66 at 44 (emphasis added).  There are simply no facts in the record to support the assertion that Grandson began receiving retirement benefits.

13

Although Grandson was plainly not engaged in "Disqualifying Employment" as defined by the Pension Plan, he was plainly engaged in "section 203(a)(3)(B) service" because he was employed "subsequent to the time the payment of benefits . . . would have commenced if the employee had not remained in or returned to employment."  29 C.F.R § 2530.203-3(c)(2).  Defendants therefore argue that the condition in Section 3.06(c) requiring that "the provisions of 29 C.F.R § 2530.203-3 are satisfied" incorporates by reference the definition of "section 203(a)(3)(B) service."  ECF No. 61 at 25–26.

Even if that were true (which is questionable), that would not save the Trustees.  To deny actuarial increases in benefits under the Pension Plan, the plain language of Section 3.06(c) requires two conditions to be met: (1) the participant is engaged in "Disqualifying Employment," as that term is defined by the Pension Plan; and (2) all other conditions of 29 C.F.R § 2530.203-3 are met.  Even if condition (2) was satisfied, condition (1) is not, for the reasons articulated above.  Grandson was never engaged in "Disqualifying Employment."

In fact, the citation to 29 C.F.R § 2530.203-3 in Section 3.06(c) cuts against Defendants' interpretation.  The citation demonstrates that the drafters of Section 3.06(c) were aware of the "commenced or would have commenced" language in 29 C.F.R § 2530.203-3(c)(2), yet only included the "commenced" language in the definition of "Disqualifying Employment."  The difference in language between the definitions of "Disqualifying Employment" and "section 203(a)(3)(B) service" presumably conveys a difference in meaning.  *See Larson v. Nationwide Agribusiness Ins. Co.*, 739 F.3d 1143, 1148 (8th Cir. 2014) (explaining that "when parties to the same contract use such different

14

language to address parallel issues . . . it is reasonable to infer that they intend this language to mean different things") (citation omitted).

The Trustees' argument that the definition of "section 203(a)(3)(B) service" serves as the definition of "Disqualifying Employment" may have been reasonable had "Disqualifying Employment" not been explicitly defined in the Pension Plan. In such a case, the Trustees might reasonably have understood the term "Disqualifying Employment" in Section 3.06(c) to refer to "section 203(a)(3)(B) service," incorporated by reference by the citation to 29 C.F.R § 2530.203-3. But here, "Disqualifying Employment" was explicitly defined by the Pension Plan in a manner different than 29 C.F.R § 2530.203-3's definition of "section 203(a)(3)(B) service," and the Trustees are not entitled to ignore the applicable plan term. *See, e.g.*, *Hayes v. Twin City Carpenters*, No. 17-cv-05267 (ECT/BRT), 2019 WL 3017747, at *10 (D. Minn. Jul. 10, 2019).

Accordingly, based on the specific Pension Plan language in effect at the time that Grandson turned 62, the Trustees' interpretation of the Pension Plan runs counter to the plain language of the Pension Plan.

## 2. Compliance with ERISA

Defendants are correct that ERISA does not require a plan to provide an actuarial increase in benefits to compensate for the period after normal retirement age that payment of the benefits is deferred because the recipient is engaged in "section 203(a)(3)(B) service." ECF No. 61 at 27–28 (citing *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992)). But Defendants' erroneous denial of benefits due under the plain language of the Pension Plan trespassed upon ERISA's core purpose: "to ensure the integrity of

15

written plans and to protect the expectations of participants and beneficiaries." *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007). Accordingly, although the Court does not weigh this factor against Defendants, the Court holds that this factor does not outweigh the Trustees' misinterpretation of unambiguous plan language. *See Luke v. IKON Office Sols. Inc.*, No. 00-cv-2755 (JRT/FLN), 2002 WL 1835645, at *7 (D. Minn. Aug. 1, 2002) (holding that although Defendants' interpretation did not conflict with ERISA, "this factor is not sufficient to overcome defendants' erroneous interpretation of the unambiguous provisions of the Plan"); *Lao v. Hartford Life & Accident Ins. Co.*, 319 F. Supp. 2d 955, 962 (D. Minn. 2004) (same).

### 3.    Meaningless or Internally Inconsistent Pension Plan Language

According to Defendants, interpreting Section 3.06(c) to deny actuarial increases in benefits only to those participants who commenced benefits would render that section meaningless because "[t]hat class of participants can never be eligible for a late retirement increase," and therefore Section 3.06(c) would not apply to Grandson "or anyone else, ever." ECF No. 61 at 16, 25. Not so: the definition of "Disqualifying Employment" simply makes clear that a participant is no longer eligible for an actuarial increase in benefits once the participant begins to receive benefits. Properly understood, Section 3.06(c) allows a participant (like Grandson) to continue working after the normal retirement age while accruing an actuarial increase in benefits, losing the opportunity to gain the actuarial increase in benefits *only after* the participant actually retires and begins receiving benefits. In this way, the Pension Plan's cut-off for an actuarial increase in benefits is keyed not to

16

the normal retirement age (as it is in 29 C.F.R § 2530.203-3), but to the time at which the participant retires and begins receiving benefits.

Of course, it is peculiar that the Pension Plan's definition of "Disqualifying Employment" inexplicably varies from the definition of "section 203(a)(3)(B) service." But it is not this Court's role to second-guess the language of the Pension Plan, for this Court must "enforce the terms of ERISA plans as they are written." *Vercellino v. Optum Insight, Inc.*, 26 F.4th 464, 469 (8th Cir. 2022). Because Defendants' interpretation of Section 3.06(c), when read in the context of the entire Pension Plan, would essentially ignore the specific definition of "Disqualifying Employment" in the Pension Plan as written, Defendants' interpretation is unreasonable. *See King*, 414 F.3d at 1004–05 (explaining that even if a party's interpretation "might be a reasonable interpretation of the language standing alone . . . it is not reasonable in the context of this policy, because it renders meaningless other important policy language").

### 4. Goals of the Pension Plan

Defendants assert that the goal of the Pension Plan is to treat similarly-situated participants equally, and that Grandson's interpretation of the Pension Plan would require similarly-situated participants—such as a participant who begins receiving benefits at age 62 but immediately begins working again, and a participant who simply continues working past the age of 62—to be treated differently. ECF No. 61 at 26–27. Defendants' argument is undermined by their inability to point to any language in the Pension Plan that actually articulates that goal. *See Lao*, 319 F. Supp. 2d at 961–62 (determining a plan's goal by reference to the plan's language); *Armstrong v. Great Lakes Higher Educ. Corp.*, No. 00-

17

cv-1543 (JRT/FLN), 2002 WL 459077, at *4 (D. Minn. Mar. 18, 2002) (same). Moreover, it is debatable whether an employee like Grandson is similarly situated to an employee who commences benefits and begins working again, given that the Pension Plan benefits from not having to immediately pay benefits to an employee like Grandson who delays commencement of benefits.[10]

In any event, "the goal of any plan is to provide coverage consistent with its terms." *Darvell v. Life Ins. Co. of N. Am.*, No. 07-cv-2113 (PJS/RLE), 2008 WL 5120993, at *11 (D. Minn. Dec. 3, 2008). A plan interpretation like the Trustees' that "erroneously deprives employees of benefits which would otherwise be due them under the unambiguous terms" of the plan cannot be consistent with plan objectives. *Lickteig*, 61 F.3d at 585.

### 5.    Consistency of Interpretation

Defendants point to evidence from the Pension Plan's third-party administrator demonstrating that from 2007 to 2024, no Pension Plan participants who continued working in Disqualifying Employment after age 62 received an actuarial increase.[11] ECF

---

[10]    Similarly, Social Security beneficiaries can receive an increase in the amount of their old-age benefit if they do not commence benefits at the full retirement age. *See* 20 C.F.R. § 404.313. Delayed retirement benefits exist in that context to protect the long-term solvency of the Social Security program. Amendments to Regulations Regarding Withdrawal of Applications and Voluntary Suspension of Benefits, 75 Fed. Reg. 76256, 76256 (Dec. 8, 2010). The same could be said of Grandson: his delay in commencing benefits protects the long-term solvency of the Pension Plan.

[11]    Grandson argues that this evidence cannot be considered because it is outside of the administrative record. ECF No. 69 at 2–6. The Court considers this evidence for the limited purpose of evaluating the Trustees' consistency in interpreting the Pension Plan. *See Leighton v. Delta Air Lines, Inc.*, No. 19-cv-1089 (JNE/JFD), 2022 WL 980301, at *7 (D. Minn. Mar. 31, 2022) (considering a prior, non-binding arbitral decision to assess a

No. 61 at 22–24.  Although at first blush this evidence suggests a consistent interpretation of the Pension Plan by the Trustees, the Court is not persuaded that this factor weighs in Defendants' favor for three reasons.

First, Defendants disregard the fact that the definition of "Disqualifying Employment" was materially different prior to 2019.  From January 1, 2015, to May 1, 2019, the Pension Plan defined "Disqualifying Employment" as:

> Forty (40) hours or more per month of work in the industry for any Employer or, work in the industry within the jurisdiction of the Union for an employer in the same or related business as any Employer, or self-employment in the industry within the jurisdiction of the Union in the same or related business as any Employer.

ECF No. 66 at 83–84.  Notably, this definition of "Disqualifying Employment" does not contain the "at the time that the participant commenced benefits" language that is included in the 2019 amendment to the definition.  Under the plain meaning of the 2015 definition of "Disqualifying Employment," any plan participant who continued working after the age of 62 (like Grandson) was ineligible for an actuarial increase in benefits.  But the fact that the Trustees denied an actuarial increase in benefits to employees like Grandson from 2015 to 2019 is irrelevant because the definition of "Disqualifying Employment" during that period was materially different than the specific definition that applies to Grandson now.

---

plan administrator's consistency in interpreting plan language).  This is a relevant *Finley* factor for the Court to analyze, and it is necessary to look outside the four corners of the Pension Plan to understand how it has been interpreted in similar circumstances.  And at the end of the day, Defendants' evidence is largely unhelpful to their position given that most of the evidence of consistency in the Doblar Declaration (ECF No. 62) is readily distinguishable from Grandson's circumstances and the remaining evidence is based on a small sample size.

Second, although the Pension Plan did not include a definition of "Disqualifying Employment" from 2007 to 2015, the plans in effect during that period also contain materially different language that excludes the concept of withholding an actuarial increase in benefits only after "the participant commenced benefits." ECF No. 56-2 at 26; ECF No. 56-4 at 25. The material variation between the terms of the Pension Plans from 2007 to 2015 and the terms of the Pension Plan in 2019 further undercuts Defendants' claim of consistent interpretation.

Third, as for the consistency of the Trustees' interpretation from 2019 to present, the Court observes that "if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious." *Morgan v. Mullins*, 643 F.2d 1320, 1324 n.4 (8th Cir. 1981); *see also Lao*, 319 F. Supp. 2d at 961 ("[A] consistently unreasonable interpretation is arguably worse than an inconsistently unreasonable one."). Even crediting the limited evidence of consistency from 2019 to the present, the Court is not persuaded that this consistently unreasonable interpretation should weigh in Defendants' favor.

In sum, after balancing the *Finley* factors—and heeding the Eighth Circuit's directive that "significant weight" be given to an unreasonable interpretation of unambiguous plan language, *Lickteig*, 61 F.3d at 585—the Court concludes that the

Trustees abused their discretion in denying Grandson an actuarial increase in benefits.  The Court therefore grants Grandson's motion and denies Defendants' motion on Count I.[12]

## II.    Attorneys' Fees and Costs

Although Grandson does not formally move for summary judgment on his claim for attorneys' fees, he states that he "will submit an affidavit supporting his fees and costs" if he prevails.  ECF No. 55 at 33.  However, as Defendants correctly point out, Grandson must do more than that.  ECF No. 67 at 43.  An award of attorneys' fees and costs under the relevant ERISA fee-shifting provision is discretionary, *see* 29 U.S.C. § 1132(g)(1), and requires consideration of various non-exclusive factors, *see Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 525 (8th Cir. 2020).  Grandson's briefing contains no analysis of the relevant factors.  Thus, the Court defers consideration of Grandson's request for attorneys' fees and costs until such time that Grandson seeks those fees and costs by appropriate motion under Fed. R. Civ. P. 54(d).

## <u>CONCLUSION</u>

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Grandson's Motion for Summary Judgment (ECF No. 53) is **GRANTED**;

---

[12]    Because the Court grants summary judgment to Grandson on Count I based upon the plain language of the Pension Plan, the Court does not address Grandson's alternative arguments that purported notice deficiencies and procedural irregularities render the Trustees' decision unreasonable.  *See* ECF No. 55 at 23–25.  Additionally, because the Court grants summary judgment to Grandson on Count I, the Court will not address Grandson's alternative count for breaches of fiduciary duty.  *See Silva v. Metro. Life. Ins. Co.*, 762 F.3d 711, 728 (8th Cir. 2014).  The Court observes, however, that multiple material factual disputes appear to permeate Grandson's fiduciary-duty claims.

2.      Defendants' Motion for Summary Judgment (ECF No. 59) is **DENIED**;

3.      Within 21 days of the entry of this Order, Grandson shall meet and confer with Defendants regarding damages; and

4.      Within 28 days of this Order, the parties shall file a joint status report to the Court explaining what action, if any, the Court should take with respect to damages.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated January 27, 2025               _s/Laura M. Provinzino_
                                     Laura M. Provinzino
                                     United States District Judge