## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JAMES GRANDSON,

                              Case No. 23-cv-214 (LMP/LIB)

                    Plaintiff,

v.

                              **ORDER GRANTING PLAINTIFF'S**
WESTERN LAKE SUPERIOR PIPING          **MOTION FOR**
INDUSTRY PENSION PLAN; BOARD      **ATTORNEYS' FEES AND COSTS**
OF TRUSTEES OF THE WESTERN
LAKE SUPERIOR PIPING INDUSTRY
PENSION PLAN,

                    Defendants.

Denise Yegge Tataryn**, Nolan Thompson Leighton & Tataryn PLC, Hopkins, MN**, for Plaintiff.

Ernest F. Peake & Stacey L. Drentlaw, **Taft Stettinius & Hollister LLP, Minneapolis, MN**, for Defendants.

On January 27, 2025, the Court granted summary judgment in favor of Plaintiff James Grandson ("Grandson") against Defendants Western Lake Superior Piping Industry Pension Plan and Board of Trustees of the Western Lake Superior Piping Industry Pension Plan (collectively, "Defendants"). Grandson now moves for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). *See* ECF No. 80. For the following reasons, Grandson's motion is granted, and he is awarded $107,710.00 in attorneys' fees and $1,334.05 in costs.

1

## FACTUAL BACKGROUND[1]

On January 27, 2023, Grandson brought this action under the Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty and benefits due under the terms of his Pension Plan.  *See* ECF No. 1.  Litigation in this case proceeded on a relatively normal path: Defendants originally moved to dismiss Grandson's complaint, ECF No. 13, which U.S. District Judge Jerry W. Blackwell granted in part and denied in part, ECF No. 22 .  Relevant here, Judge Blackwell denied Defendants' motion to dismiss Grandson's benefits-due claim.  *Id.*  At the hearing on Defendants' motion to dismiss, Judge Blackwell represented that Defendants' interpretation of the Pension Plan "seems to contradict the plain language of the Plan and the Summary Plan Description."  ECF No. 26 at 32.  Grandson then moved for leave to amend his complaint, *see* ECF No. 32, which was required because Defendants would not permit the amendments without a motion, ECF No. 82 ¶ 9.  The Court granted leave to amend.  *See* ECF No. 40.

Discovery then commenced, which was largely uneventful.[2]  The parties then each moved for summary judgment on Grandson's benefits-due and fiduciary-duty claims.  ECF Nos. 53, 59.  On January 27, 2025, the Court granted Grandson's motion for summary judgment and denied Defendants' motion for summary judgment.  ECF No. 78.  The Court first rejected Defendants' argument that Grandson had failed to properly exhaust his

---

[1]    The Court presumes familiarity with the specific facts of this case and incorporates the facts from the Court's summary-judgment order herein.  See ECF No. 78 at 2–6.

[2]    Grandson filed a motion to compel discovery, ECF No. 47, but the parties later resolved their discovery disputes without intervention of the Court, ECF No. 52.

administrative remedies. *See id.* at 7–9. The Court then applied the five-factor test from *Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992), and concluded that the Trustees' decision to deny Grandson an actuarial increase from his normal retirement benefit was an abuse of discretion. *Id.* at 9–21. Specifically, the Court concluded that the Defendants' interpretation of the Pension Plan contradicted the plan's plain language, that Defendants' interpretation of the plan rendered the plan's definition of "Disqualifying Employment" meaningless, that the Plan's denial of benefits was inconsistent with Plan objectives and ERISA's purpose, and that any limited evidence of consistent interpretation by the Trustees could not overcome the other *Finley* factors. *Id.* Because the Court granted summary judgment to Grandson on his benefits-due claim, it did not reach the merits of his breach-of-fiduciary-duty claim. *Id.* at 21 n.12.

As contemplated in this Court's Order granting summary judgment to Grandson, ECF No. 78 at 21, Grandson now moves for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). ECF No. 80. Grandson seeks $135,700.00 in attorneys' fees for the services of his two attorneys: Denise Tataryn and Jody Galman. *See* ECF Nos. 82, 82-1. Grandson also seeks $1,334.05 in costs. ECF No. 82-1 at 12. Defendants assert that Grandson is not entitled to attorneys' fees and costs and, even if he is entitled to fees and costs, the attorneys' fees sought should be reduced for unnecessary and excessive work. *See* ECF No. 86.

## ANALYSIS

In an ERISA action by a beneficiary, a district court may award "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The party seeking fees and costs must show "some degree of success on the merits" but need not be

a "prevailing party." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244–45 (2010). There is no dispute that Grandson, who succeeded on his benefits-due claim at summary judgment, is a "prevailing party." *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 525 (8th Cir. 2020).

The Court recognizes that "although there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040–41 (8th Cir. 2006). Nonetheless, an award of attorneys' fees and costs under Section 1132(g)(1) is discretionary, not mandatory. *See Hardt*, 560 U.S. at 254. Therefore, the Court must first determine whether an award of attorneys' fees and costs is appropriate. If the answer to this question is "yes," then the Court must calculate the "reasonable" attorneys' fees and costs. 29 U.S.C. § 1132(g)(1).

## I.    Whether to Award Attorneys' Fees and Costs

In determining whether to award attorneys' fees and costs under Section 1132(g), courts consider five non-exclusive factors, "which are general guidelines, not mechanically applied." *Johnson*, 950 F.3d at 525. These factors are: "(1) the degree of the opposing parties' culpability or bad faith; (2) the opposing parties' ability to satisfy an award; (3) deterrence of others in similar circumstances; (4) whether the requesting parties sought to benefit all participants and beneficiaries of an ERISA plan, or to resolve a significant legal ERISA question; and (5) the relative merits of the parties' positions." *Id.* (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 495–96 (8th Cir. 1984)). The Court considers each factor in turn.

4

### a.  Degree of Defendants' Culpability or Bad Faith

Contrary to Defendants' assertion, *see* ECF No. 86 at 2, when evaluating a party's culpability under this factor, the Court need not find bad faith.  *See Starr*, 461 F.3d at 1041 ("[T]he absence of bad faith is not dispositive.").  Rather, culpability may be found when a defendant fails to "exercise the care required of it in the administrative process." *Proctor v. Unum Life Ins. Co. of Am.*, No. 20-cv-2472 (JRT/DTS), 2022 WL 4585278, at *18 (D. Minn. Sept. 29, 2022); *see also Kaminski v. UNUM Life Ins. Co. of Am.*, 517 F. Supp. 3d 825, 869 (D. Minn. 2021) (finding culpability when an insurance company "could have exercised greater care in reviewing the record"); *Jalowiec v. Aetna Life Ins. Co.*, 155 F. Supp. 3d 915, 949 (D. Minn. 2015) (finding culpability when an insurance company heavily relied on "questionable findings" from its independent reviewers).

For two reasons, the Court finds a meaningful degree of culpability by Defendants. First, the Court held in its summary-judgment order that Defendants' denial of Grandson's benefits contradicted the plain language of the Pension Plan.  ECF No. 78 at 10–15.  That conclusion should not have come as a great surprise to Defendants, as there were several red flags throughout the administrative process and this litigation that should have alerted Defendants to the fact that their legal argument was on thin ice.  Indeed, during the administrative process, Plan Counsel himself recognized that Grandson had identified a "glitch" in the Pension Plan language.  ECF No. 66 at 43.  Nevertheless, the Trustees persisted in denying Grandson the benefits he was due.  Then, during the hearing on Defendants' motion to dismiss, Judge Blackwell explicitly stated that Defendants' interpretation of the Pension Plan "seems to contradict the plain language of the Plan and

the Summary Plan Description." ECF No. 26 at 32. Although the Court does not believe that Defendants maintained this suit in bad faith,[3] Defendants evidently did not take the hint that they were headed toward defeat, all the while requiring Grandson to incur mounting attorneys' fees. As this Court knows, getting a case from complaint (and amended complaint) through briefing on cross-summary-judgment motions is no small feat. Compensating Grandson for those fees is therefore appropriate.

Second, Grandson provided the Trustees with not one, not two, not three, but *four* opportunities to correct their erroneous denial of benefits prior to commencing this litigation. *See* ECF No. 66 at 6 (initial inquiry in January 2022); *id.* at 23–30 (August 2022 request for reconsideration); *id.* at 35 (September 2022 request for reconsideration); ECF No. 56-8 (December 2022 demand letter from Grandson's attorney). Then, during the litigation, Grandson's counsel attempted to engage in settlement discussions with Defendants, but Defendants "did not engage in settlement negotiations," a point Defendants do not dispute. ECF No. 82 ¶ 9. Defendants had ample opportunity to "exercise the care required of it in the administrative process" and in this litigation, yet chose not to do so. *Proctor*, 2022 WL 4585278, at *18. The Court therefore finds this factor weighs strongly in favor of an award of attorneys' fees and costs.

---

[3]    Well, with one exception. Defendants' administrative-exhaustion argument—raised both in Defendants' motion to dismiss and motion for summary judgment—verged on bad faith. As described in the Court's summary-judgment order, Defendants explicitly represented to Grandson on multiple occasions that he had adequately exhausted his administrative benefits. ECF No. 78 at 7–9. Defendants' complete about-face on that issue during this litigation smacks of gamesmanship.

**b. Opposing Party's Ability to Satisfy an Award**

Grandson argues that Defendants have the ability to satisfy a fee award because Defendants have an insurance policy with a $5 million liability limit, the Pension Plan is fully funded and not likely to decline in the foreseeable future, and because Defendants retained a large, national law firm to represent them. ECF No. 81 at 4; ECF No. 82-2. Although Defendants quibble with these arguments, they do not provide any evidence that they are unable to satisfy a fee award. This factor therefore weighs in favor of a fee award. *See Johnson*, 950 F.3d at 525 (holding that this factor favors a fee award when defendants "provide[d] no evidence that the funds cannot satisfy an award based on their assets or that beneficiaries will be harmed").

**c. Deterrence of Others in Similar Circumstances**

This factor largely falls in line with the "culpability" factor and similarly favors an award of fees and costs. A fee award "deter[s] ERISA fiduciaries from wrongful denial of claims" and "further[s] the remedial goals of the statute." *Reed v. Shenandoah Mem'l Hosp.*, No. 8:01-cv-435, 2002 WL 1964826, at *4 (D. Neb. Aug. 12, 2002); *see Proctor*, 2022 WL 4585278, at *19 ("Failing to award fees here would discourage future claimants who have been wrongfully denied benefits from challenging that determination, decreasing access to courts."). That is particularly true here, when Grandson provided Defendants with multiple opportunities to correct their error. *See* ECF No. 66 at 6, 23–30, 35; ECF No. 56-8. Having done so at any one of those earlier stages of the administrative or litigation process would have resulted in no attorneys' fees. A fee award here will thus deter parties from rigidly adhering to their initially asserted arguments and encourage

7

parties to reflect thoughtfully on the merits of their positions throughout the administrative process and subsequent litigation.

### d.  Significant ERISA Question or Benefit to all Participants

This factor has no effect on the fees analysis in this case.  This case revolved around the interpretation of language specific to Grandson's Pension Plan, and although the ERISA issues in this case were complex, they were not "significant" in the sense of establishing a general rule of law that would broadly benefit Pension Plan participants.  *Johnson*, 950 F.3d at 525.  Moreover, it is unclear how many Pension Plan participants are similarly situated to Grandson, such that the Court's interpretation of the Pension Plan will impact their benefits, too.[4]  In such cases, this factor is neutral.  *See Nelson*, 2010 WL 153040, at *4.

### e.  Relative Merits of the Parties' Positions

This factor favors an award of fees and costs, as Grandson succeeded on his benefits-due claim in its entirety.  That was no small feat, as Grandson had to surmount the imposing abuse-of-discretion standard, under which the Trustees' decision to deny benefits is afforded "great deference."  *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 833 (8th Cir. 2014).  Indeed, by succeeding on his benefits-due claim, Grandson demonstrated that the Trustees' interpretation of the plan was unreasonable.  *See King v. Hartford Life & Accident*

---

[4]     As the Court noted in evaluating the consistency of the Trustees' interpretation in the summary-judgment order, the differences in applicable Pension Plan language from year-to-year may reduce the number of participants that would benefit from the Court's interpretation of language specific to the Pension Plan that was in effect at the time Grandson reached the normal retirement age.  *See* ECF No. 78 at 20.

*Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (citation omitted) (explaining that the abuse-of-discretion standard requires courts to affirm a plan administrator's decision "if reasonable").  Grandson's position was therefore relatively strong, compared to the Defendants' "unreasonable" position, and therefore supports an award of fees and costs.

In sum, four of the relevant factors support an award of fees and costs, and one factor is neutral.  The Court will therefore grant Grandson his reasonable fees and costs.

## II.    Reasonable Attorneys' Fees and Costs

Once a court determines that a party is entitled to fees and costs as a prevailing party, the primary concern is whether the fees and costs are reasonable.  *See Blum v. Stenson*, 465 U.S. 886, 893–95 (1984).

### a.    Attorneys' Fees

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002).  In doing so, the Court "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" because a prevailing party is not entitled to recover for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983) (citation omitted).  That is because the Court "is not a rubber stamp for attorneys' fees requests." *See Glass-Inspiration GMBH Design + Eng'g v. M.G. McGrath, Inc. Glass & Glazing*, No. 24-cv-3315 (LMP/DLM), 2025 WL 842309, at *2 (D. Minn. Mar. 18, 2025).  In determining a reasonable fee award, the Court may also consider other non-exclusive factors, such as (1) the degree of the moving party's success, (2) the novelty and

difficulty of the legal questions involved, (3) the skill requisite to perform the legal service properly, (4) the experience, reputation, and ability of the attorneys, and (5) awards in similar cases. *Id.* at 430 n.3. However, the Court recognizes that these factors may also be relevant to determining the initial lodestar calculation. *See id.* at 434 n.9 (explaining that "many of these factors usually are subsumed within the initial [lodestar] calculation"). The party seeking attorneys' fees bears the burden of proving the reasonableness of the hours worked and the rates claimed. *Id.* at 433–34.

The Court will proceed by first determining the number of hours reasonably expended by counsel and then evaluating the reasonableness of counsel's rates. The Court will then examine whether an upward or downward adjustment is warranted based on the factors identified in *Hensley*.

### i. Reasonable Hours

Defendants claim that the total time spent on this case (303.8 hours) was excessive and unnecessary. ECF No. 86 at 6–10. Defendants challenge several categories of work completed by Attorneys Tataryn and Galman; the Court addresses each in turn.

***Motion to Dismiss.*** Defendants claim that Grandson's counsel excessively billed 77.1[5] hours to respond to Defendants' motion to dismiss. *Id.* at 7. Defendants note that their motion to dismiss was successful as to Grandson's breach-of-fiduciary-duty claim and

---

[5]    Although Defendants calculate 75.9 hours spent on the motion to dismiss, the Court calculates 77.1 hours spent on the motion to dismiss based on timesheets from Grandson's counsel: 63.9 hours spent on researching and drafting the opposition brief, 10.5 hours spent preparing for oral argument, and 2.7 hours spent on oral argument and debriefing with Grandson. *See* ECF No. 82-1 at 2–4.

argue that the Court "may reduce a fee award based on hours spent on unsuccessful motion practice." *Id.* However, the cases cited by Defendants explain that a party *who files* an unsuccessful motion should not recover fees for that motion. *See Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, No. 07-cv-1845 (RHK/JSM), 2008 WL 1944887, at *4 (D. Minn. May 1, 2008), *rev'd on other grounds*, 574 F.3d 644 (8th Cir. 2009); *Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 536 (Minn. Ct. App. 1993). Here, it was Defendants who filed the motion to dismiss, meaning that Grandson did not have much of a choice in responding to the motion. Moreover, Grandson largely succeeded in opposing Defendants' motion to dismiss, as Judge Blackwell rejected Defendants' arguments seeking dismissal on administrative exhaustion grounds and based on the plain language of the Pension Plan. *See* ECF No. 22. And although Defendants were successful in dismissing Grandson's breach-of-fiduciary-duty claim, that victory was largely Pyrrhic, as Grandson was able to successfully replead that claim. *See* ECF No. 41. The Court sees no reason to reduce Grandson's fee award for a purported lack of success at the motion-to-dismiss stage. And although the Court discerns that 77.1 hours to research, prepare, and argue an opposition to a motion to dismiss seems slightly higher than normal, given the complex issues implicated in the motion to dismiss, the Court does not believe it is out of the bounds of reasonableness.

However, the Court agrees with Defendants that the time spent to travel to St. Paul to argue the motion should be reduced. *See* ECF No. 86 at 9–10. Although attorney travel time is compensable, *see McDonald v. Armontrout*, 860 F.2d 1456, 1463 (8th Cir. 1988), a reduction in the fee award is appropriate for time spent "doing nothing more than

11

traveling," *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, No. 05-cv-2809 (JRT/JJG), 2012 WL 6760098, at *14 (D. Minn. Sept. 30, 2012) (reducing hourly rate by fifty percent for hours spent traveling); *see McDonald*, 860 F.2d at 1463 (upholding a fifty percent reduction in hourly billing for travel time).  The Court agrees with that sentiment and will therefore reduce the compensable travel time entry from two hours to one hour. *See* ECF No. 82-1 at 4.[6]

*Pretrial Conference.*  Defendants argue that Grandson's counsel spent an excessive amount of time (6.4 hours) preparing for a pretrial conference that never occurred.  ECF No. 86 at 7–8.  However, Defendants do not explain which time entries they are challenging, and the Court cannot discern which time entries add up to 6.4 hours of preparation for a pretrial conference.  The Court thus will not address this argument.  *See W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 57 F. Supp. 3d 950, 983 n.18 (D. Minn. 2014) (citation omitted) (explaining that "[a]rguments that are not adequately developed or supported" are deemed forfeited).

*Amended Complaint.*  Defendants next assert that Grandson's counsel excessively billed 24.8[7] hours to research and draft a motion for leave to amend and to draft an amended

---

[6]    It is not clear from the billing entry if two hours were spent on travel, or whether two hours were spent on travel *and* the oral argument.  But because Grandson bears the burden of proving the reasonableness of the hours and the rates claimed, the Court construes the entry to relate exclusively to travel time.  *See Hensley*, 461 U.S. at 433–34.

[7]    Although Defendants calculate 25.4 hours spent on the motion for leave to amend and the amended complaint, the Court calculates 24.8 hours based on timesheets from Grandson's counsel: 12.8 hours spent on researching and drafting the motion for leave to

complaint.  ECF No. 86 at 8.  However, most of these hours could have been avoided had Defendants consented to Grandson amending his complaint, but Defendants "were not willing to permit the amendments without a motion."  ECF No. 82 ¶ 9.  That was certainly Defendants' right.  But a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citation omitted).

Although the Court finds Defendants' argument unavailing, two of the time entries related to the motion for leave to amend and amended complaint are impermissibly vague. Billing records that are "[i]ncomplete or imprecise" may warrant a reduced fee, because they "preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim."  *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (citation omitted).  Here, the Court eliminates 0.2 hours of work for two imprecise time entries.[8]  *See Benson v. City of Lincoln*, No. 4:18-cv-3127, 2024 WL 2155139, at *23 (D. Neb. May 13, 2024) (explaining that time entries like "call to [person]" and "emails with [person]" are imprecise and properly excluded from a fee award).  And, consistent with the Court's prior discussion regarding travel time, the

---

amend and amended complaint, 4.5 hours spent preparing for oral argument, and 7.5 hours spent on oral argument and debriefing with Grandson.  *See* ECF No. 82-1 at 2–4.

[8]     Those entries are "Follow-up email to S. Drentlaw" and "Exchange of emails with attorney."  ECF No. 82-1 at 5–6.

Court reduces the compensable time for travel to the hearing from 5.2 hours to 2.6 hours. *See* ECF No. 82-1 at 6.

**Discovery.**  Defendants next assert that Grandson's counsel excessively billed 33.9[9] hours for discovery, noting that discovery took place over a two-month period and involved only one deposition.  ECF No. 86 at 8.  The Court believes that 33.9 hours spent on discovery is reasonable in an ERISA case such as this one.  *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1196 (S.D. Cal. 2003) (finding 125 hours of discovery to be reasonable in an individual benefits-due case under ERISA); *Reg'l Emps.' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 716 (E.D. Pa. 2016) (awarding 45 hours of fees for written discovery in an individual benefits-due case under ERISA.  However, consistent with the Court's prior discussion regarding travel time, the Court reduces the compensable time for travel to the deposition from 5.3 hours to 2.7 hours.  *See* ECF No. 82-1 at 7.

**Summary Judgment Briefing.**  Defendants next assert that Grandson's counsel excessively billed 125.2 hours on Grandson's motion for summary judgment and on responding to Defendants' own motion for summary judgment.  ECF No. 86 at 8.  For two reasons, the Court agrees.  First, the issues implicated in Grandson's opposition brief to Defendants' motion for summary judgment were largely the same as the issues raised in Grandson's own motion for summary judgment (specifically, the factual background, the analysis of the *Finley* factors, and the analysis of Defendants' alleged breaches of fiduciary

---

[9]    Although Defendants calculate 33.3 hours spent on discovery, the Court calculates 33.9 hours based on timesheets from Grandson's counsel.  *See* ECF No. 82-1 at 6–8.

duty). *See* ECF Nos. 55, 69. And Grandson's reply brief in support of his own summary-judgment motion largely repeated the arguments already made in Grandson's motion for summary judgment and opposition brief. *Compare* ECF Nos. 55, 69, *with* ECF No. 71. Nonetheless, by the Court's calculation, Grandson's counsel spent roughly the same amount of time on each of these filings: 44.5 hours for his opening brief, 33.6 hours for his opposition brief, and 34.3 hours for his reply brief.[10]

Second, many of the arguments raised in Defendants' motion for summary judgment were arguments already raised in Defendants' earlier motion to dismiss. *Compare* ECF No. 13 at 12–23 (Defendants' motion to dismiss arguing administrative exhaustion, plan interpretation issues, ERISA interpretation issues, and notice deficiency issues), *with* ECF No. 61 at 17–20, 25–30 (Defendants' motion for summary judgment making those same arguments). Considering the significant amount of time that Grandson's counsel spent on the opposition brief to Defendants' motion to dismiss, which largely covered the same issues, it is unclear why the research and drafting completed during the motion-to-dismiss stage did not translate into greater efficiency at the summary-judgment stage.

In sum, the Court concludes that the billing for Grandson's summary-judgment briefing contains some duplicative and excessive work, which justifies a reduction in hours. *See Satanic Temple, Inc. v. City of Belle Plaine*, No. 21-cv-0336 (WMW/JFD), 2022 WL 1639514, at *5 (D. Minn. May 24, 2022) (reducing fee award for briefing because the

---

[10]    It is curious that Grandson's counsel took longer on Grandson's reply brief than on his opposition brief, given the fact that Grandson's reply brief is less than half of the length of his opposition brief.

briefing was duplicative of prior briefing); *A.P. v. Pasadena Unified Sch. Dist.*, No. CV 19-7965-MWF (SSx), 2021 WL 5249658, at *10 (C.D. Cal. Aug. 24, 2021) (reducing redundant fees for cross-motions for summary judgment when the two motions "involved the same or substantially similar issues"). Accordingly, the Court will reduce the hours spent on Grandson's opposition brief by one-third, from 33.6 hours to 22.4 hours. The Court will also reduce the hours spent on Grandson's reply brief by one-third, from 34.3 hours to 22.9 hours. This reduction reflects the efficiency that Grandson's counsel should have demonstrated after briefing many of the same legal issues throughout the motion-to-dismiss and summary-judgment stages. And, consistent with the Court's prior discussion regarding travel time, the Court reduces the compensable time for travel to the hearing from 1.4 hours to 0.7 hours. See ECF No. 82-1 at 11.

**Fees on Fees.** Finally, Defendants argue that Grandson is not entitled to fees incurred in bringing the instant motion for attorneys' fees and costs (often termed "fees on fees"). ECF No. 86 at 8–9. "[C]ompensation for time necessarily spent in preparing a fee petition is appropriate in cases where attorneys' fees are authorized by statute." *Jorstad v. IDS Realty Tr.*, 643 F.2d 1305, 1314 (8th Cir. 1981). But those fees, as always, must be reasonable. *See El-Tabech v. Clarke*, 616 F.3d 834, 843–44 (8th Cir. 2010).

Here, Defendants assert that the fees on fees sought by Grandson are unreasonable because Grandson's counsel appears to have based Grandson's motion for attorneys' fees on template motions used by Grandson's counsel in other cases from more than a decade ago. ECF No. 86 at 8–9; *see* ECF Nos. 87-1, 87-2. Although there is some overlap in case citations and language between the template briefs and Grandson's brief, the factual

circumstances and legal research present in all three briefs differ to an appreciable degree.[11] This is not a case where Grandson's counsel merely plugged Grandson's name into a canned, ready-made motion.[12] And given that the template motions are more than a decade old, it makes sense that Grandson's counsel would have conducted some research to ensure that the case law and propositions in earlier briefs remained valid. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (explaining that "[w]hen a case goes on for many years, a lot of legal work product will grow stale," which may require an attorney to "get up to speed with the research previously performed"). The Court therefore finds that an award of 15.7 hours—roughly equivalent to two work days—for Grandson's detailed and organized attorneys'-fees motion is reasonable.

**Other Issues.** Having resolved Defendants' challenges to Grandson's requested fees, the Court has evaluated the time sheets of Grandson's counsel for any additional "excessive, redundant, or otherwise unnecessary" fees. *Hensley*, 461 U.S. at 434. The Court has identified 2.3 hours of fees that lack a specific description of what type of work was done for Grandson's case.[13] The Court therefore excludes these "imprecise" entries

---

[11]     For example, the procedural and factual backgrounds of Grandson's case are not present in the other briefs. *See* ECF No. 81 at 7–11. The motion also includes citations to cases that were decided after the template motions were filed. *Id.* at 4, 6, 11.

[12]     Defendants' position could also put Grandson's counsel in a Catch-22, because if Grandson's counsel had written an attorneys'-fees motion from scratch, Defendants could protest that Grandson's counsel should have been more efficient by relying on previous attorneys'-fees motions that she had written.

[13]     Specifically, these fees are "Review documents from client" (0.3 hours), "Exchange of emails with M. Joliat" (0.2 hours), "Exchange of emails with R. Doblar" (0.1 hours),

from its fee calculation. *H.J.*, 925 F.2d at 260; *see Benson*, 2024 WL 2155139, at *23.

In sum, the Court awards Grandson fees for 271.8 hours of work: 251.6 hours of work by Tataryn and 20.2 hours of work by Galman.

### ii. Reasonable Rates

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). Counsel bear the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. District courts may also "rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Here, Grandson seeks fees for two of his attorneys: Denise Tataryn (whose hourly rate is $450) and Jody Galman (whose hourly rate is $400). ECF No. 82 ¶ 8. Both Tataryn and Galman are seasoned and experienced ERISA practitioners; Tataryn has handled numerous ERISA litigation matters for over 30 years, ECF No. 82 ¶¶ 4, 6, and Galman has

---

"Follow-up email to R. Doblar" (0.1 hours), "Exchange of emails with R. Doblar" (0.1 hours), "Receipt of additional documents. Forward to Jim" (0.1 hours), "Receipt of additional document from Jim" (0.1 hours), "Leave voice mail message for R. Doblar. Exchange of emails with Jim. Email from R. Doblar." (0.2 hours), "Follow-up email to R. Doblar. Exchange of emails with attorney" (0.3 hours), "Follow-up email to E. Peake" (0.1 hours), "Email from defense counsel" (0.1 hours), "Follow-up email to E. Peake. Emails to Jim" (0.1 hours), "Receipt of Pretrial Notice" (0.1 hours), "Exchange of emails with S. Drentlaw" (0.1 hours), "Email from Stacey" (0.1 hours), "Receipt of ECF filings" (0.1 hours), and "Follow-up email to S. Drentlaw" (0.1 hours). ECF No. 82-1 at 1–2; 4–6.

focused exclusively on ERISA litigation for nearly 25 years, ECF No. 81 at 12; ECF No. 83 ¶ 12. *See also Christoff v. Unum Life Ins. Co. of Am.*, No. 17-cv-3512 (DWF/KMM), 2019 WL 6715067, at *1 (D. Minn. Dec. 10, 2019) (noting that both Tataryn and Galman "have many years of experience with ERISA cases"). Defendants agree that Tataryn's and Galman's hourly rates are reasonable. ECF No. 86 at 6.

Notwithstanding the parties' agreement about the reasonableness of the hourly rates, it is the Court that must determine what rate is reasonable. And here, the Court concludes that Tataryn's and Galman's claimed rates are slightly elevated for experienced, reputable ERISA practitioners in this District. Consistent with the caselaw in this District, the Court believes that hourly rates of $400 for Tataryn and $350 for Galman are reasonable. *See, e.g.*, *Nesse v. Green Nature-Cycle, LLC*, No. 18-cv-636 (ECT/HB), 2020 WL 2848193, at *2 (D. Minn. June 2, 2020) (in 2020, finding that an hourly rate of $295 in an employee benefits case was appropriate for attorney with 20 years of experience); *Christoff*, 2019 WL 6715067, at *4 (in 2019, finding that a reasonable rate for Tataryn and Galman was $320); *Werb v. ReliaStar Life Ins. Co.*, 13-cv-669 (PJS/JSM), 2014 WL 5431585, at *3 (D. Minn. Oct. 27, 2014) (finding, in 2014, $350 to be a reasonable hourly rate for attorney with over 40 years of ERISA experience and $320 as a reasonable hourly rate for attorneys with over 20 years of ERISA experience); *see also Frerichs v. Hartford Life & Accident Ins. Co.*, No. 10-cv-3340 (SRN/LIB), 2012 WL 3734124, at *2 (D. Minn. Aug. 28, 2012) (collecting cases and noting in 2012 that "[c]ourts in this Circuit typically award hourly rates of $300 or less to prevailing attorneys in ERISA litigation").

Applying Tataryn's and Galman's reasonable hourly rate to the hours reasonably expended in this litigation leads to a lodestar amount of $107,710.00. In evaluating "awards in similar cases," *Hensley*, 461 U.S. at 430 n.3, the Court notes that this fee award is moderately higher than others in similar ERISA benefits-due cases, *see Christoff*, 2019 WL 6715067, at *5 (awarding $98,058.20); *Nelson*, 2010 WL 153040, at *14 (awarding $56,780.75). However, considering the degree of Grandson's success—here, total victory—the Court is not persuaded that a downward adjustment in fees is warranted. *See Hensley*, 461 U.S. at 430 n.3. Moreover, this case involved complex questions of plan interpretation and how the Pension Plan interacts with federal regulations, which further support the fee award. *See id.* Finally, the Court reiterates that the "time and labor required" in this case was increased by Defendants' obstructive conduct and refusal to engage in settlement discussions. *Id.*; *see* ECF No. 82 ¶ 9. "[A]lthough [Defendants] had the right to play hardball in contesting [Grandson's] claims, it is also appropriate that [Defendants] bear the cost of their obstructionist strategy." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) (first alteration in original) (citation omitted); *see also Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116 (SRN/SER), 2015 WL 1746375, at *15 (D. Minn. Apr. 13, 2015) ("[A] heavily-litigated case is not typically a one-sided affair . . . which explains why [plaintiff's] attorney's fees and costs are relatively high."). Accordingly, the Court is not inclined to adjust the lodestar calculation, which carries a "strong presumption" of reasonableness. *Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023) (quoting *Pennsylvania v. Del. Valley*

*Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).  The Court therefore grants

Grandson $107,710.00 in attorneys' fees.

### b.  Costs

Grandson also seeks $1,334.05 in costs for court fees, service of process, and

deposition costs.  ECF No. 81 at 14.  These amounts are undisputed, and the Court finds

them to be reasonable and supported by the record.  *See* ECF No. 82-1 at 16.

### <u>CONCLUSION</u>

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Grandson's Motion for Attorneys' Fees and Costs (ECF No. 80) is

**GRANTED**.

2.    Grandson is awarded $107,710.00 in attorneys' fees and $1,334.05 in costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 21, 2025                     *s/Laura M. Provinzino*
                                          Laura M. Provinzino
                                          United States District Judge